STATE OF NORTH CAROLINA, Plaintiff v. OMAR ROMERO, Defendant

No. COA03-755

(Filed 4 May 2004)

## 1. Child Abuse and Neglect— criminal abuse—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss a charge of felony child abuse for insufficient evidence of serious injury. Whether an injury is serious is a question for the jury; here, the evidence established that defendant hit his one-year old son at least once with a belt during an assault on his wife, the child cried after being hit, there was a visible bruise on his head, a deputy and a social worker testified about the bruise, and photographs of the bruise were admitted for the jury to observe. N.C.G.S. § 14-318.4(a).

## 2. Constitutional Law— double jeopardy—kidnapping and assault

The trial court did not err by refusing to arrest judgment on double jeopardy grounds on an assault with a deadly weapon conviction where defendant was also convicted of first-degree kidnapping on the same facts. Although defendant argues that the same conduct was used to prove serious bodily harm for kidnapping and serious injury for assault, there was sufficient evidence that defendant dragged his wife inside their home for the purpose of assaulting her and that the crime of kidnapping was complete once he dragged her inside, whether or not the contemplated assault was completed.

Appeal by defendant from judgment entered 6 December 2002 by Judge Zoro J. Guice, Jr., in McDowell County Superior Court. Heard in the Court of Appeals 29 March 2004.

*Attorney General Roy Cooper, by Special Deputy Attorney General James A. Wellons, for the State.*

*Eric A. Bach for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Omar Romero ("defendant") appeals his conviction of assault with a deadly weapon inflicting serious injury, first-degree kidnap-

ping, assault inflicting serious injury, two counts of felony child abuse inflicting serious injury, and two counts of assault on a child under twelve. For the reasons stated herein, we hold that defendant received a trial free of prejudicial error.

The State's evidence tends to show the following: At approximately 9:00 p.m. on 24 August 2002, defendant entered the home he shared with then-pregnant Laura Valdez ("Valdez"), their four-year-old daughter, D.R., and their one-year-old son, O.R. Immediately upon entering the home, defendant began screaming at Valdez and the children. Defendant claimed that he had been spying on Valdez, and he demanded that Valdez tell him the name· of the man with whom she and the two children had interacted earlier in the day.

The ensuing argument between Valdez and defendant quickly escalated to violence. For the next twenty-five minutes, defendant repeatedly beat Valdez with his fists, feet, belt, and gun. During the altercation, Valdez picked up the one-year-old child, O.R., and held him in front of her, hoping defendant would stop beating her with his belt. Defendant instead continued to strike Valdez with his belt, striking O.R. on the head with the belt as well. At another point during the altercation, defendant confronted D.R. and questioned her about the man defendant had observed D.R. and Valdez with earlier during the day. When D.R. would not answer, defendant began to beat her. Defendant struck D.R. numerous times with his belt, hitting her on her arms, legs, and back. At a third point during the altercation, Valdez escaped outside and attempted to call for help. Defendant pursued Valdez to the front yard, grabbed her by her hair, and dragged her back inside the home. Once inside, defendant threatened Valdez with a knife and then beat her again with his belt and gun.

Valdez was taken to the hospital for examination and observation, and her unborn child was examined by ultrasound. As a result of the altercation with defendant, Valdez suffered numerous bruises, welts, and blisters on her back, face, shoulders, legs, and feet. She was hospitalized overnight and was given a neck brace to wear for the next several days. D.R. suffered numerous welts, red marks, and bruises on her legs, arms, and back. O.R. suffered a bruise to his forehead.

On 14 October 2002, defendant was indicted on two counts of assault on a child under twelve, two counts of felony child abuse inflicting serious injury, one count of first-degree kidnapping, one count of assault inflicting serious injury, and one count of assault

with a deadly weapon with intent to kill inflicting serious injury. Defendant's trial commenced on 2 December 2002. On 6 December 2002, the jury returned a guilty verdict on all charges, with the exception that as to the charge of assault with a deadly weapon with intent to kill inflicting serious injury, defendant was found guilty of the lesser-included offense of assault with a deadly weapon inflicting serious injury. Defendant appeals the verdicts.

As an initial matter, we note that defendant's brief contains arguments supporting only two of his original thirteen assignments of error. Pursuant to North Carolina Rule of Appellate Procedure 28(b)(6) (2004), the eleven omitted assignments of error are deemed abandoned. Therefore, we limit our present review to those assignments of error properly preserved by defendant for appeal.

The issues presented on appeal are (I) whether the trial court erred by denying defendant's motion to dismiss the charge of felony child abuse against O.R.; and (II) whether the trial court erred by failing to arrest judgment on the charge of assault with a deadly weapon inflicting serious injury.

[1] Defendant first assigns error to the trial court order denying defendant's motion to dismiss the charge of felony child abuse against O.R. Defendant argues that the State presented insufficient evidence of a required element of felony child abuse. We disagree.

In ruling on a motion to dismiss, a trial court must determine whether there is substantial evidence of each essential element of the offenses charged. *State v. Roddey*, 110 N.C. App. 810, 812, 431 S.E.2d 245, 247 (1993). Whether the State's evidence is substantial is a question of law for the trial court. *State v. Lowe*, 154 N.C. App. 607, 609, 572 S.E.2d 850, 853 (2002). The motion to dismiss must be denied if the evidence, viewed in the light most favorable to the State, would allow a jury to reasonably infer that the defendant is guilty. *State v. Williams*, 154 N.C. App. 176, 178, 571 S.E.2d 619, 620-21 (2003).

In the case *sub judice*, defendant was charged with felony child abuse in violation of N.C. Gen. Stat. § 14-318.4(a) (2003). To convict a defendant of felony child abuse, the State must prove (1) that defendant is the parent or caretaker of a child under the age of 16; (2) that defendant "intentionally inflict[ed] . . . serious physical injury upon or to the child or . . . intentionally committ[ed] an assault upon the child"; and (3) that the assault or infliction of injury resulted in "serious physical injury." N.C. Gen. Stat. § 14-318.4(a).

Defendant contends that the State presented insufficient evidence that O.R. suffered "serious physical injury" as a result of the assault. We disagree.

Under N.C. Gen. Stat. § 14-318.4, a "serious physical injury" is defined as an injury that causes "great pain and suffering." *State v. Phillips*, 328 N.C. 1, 20, 399 S.E.2d 293, 303, *cert. denied*, 501 U.S. 1208 (1991). In determining whether an injury is serious, pertinent factors to consider include, but are not limited to: hospitalization, pain, loss of blood, and time lost from work. *State v. Owens*, 65 N.C. App. 107, 111, 308 S.E.2d 494, 498 (1983). Defendant contends O.R.'s injury should not be categorized as serious because witnesses only noticed a small bruise on O.R. and the State did not provide documentation of the nature of the injury and degree of pain associated with the injury. However, neither the statute nor our case law demand that an injury require immediate medical attention in order for it to be considered a "serious physical injury." *Williams*, 154 N.C. App. at 180, 571 S.E.2d at 622. Furthermore, because the nature of an injury is dependant upon the relative facts of each case, whether an injury is "serious" is generally a question for the jury. *See State v. James*, 321 N.C. 676, 688, 365 S.E.2d 579, 586-87 (1988) (holding that "[w]hether a serious injury has been inflicted must be determined according to the facts of the particular case."); *Williams*, 154 N.C. App. at 180, 571 S.E.2d at 622 (holding that "conflicts in the evidence as to [the victim's] level of activity and the extent, if any, to which she appeared to be in pain after the alleged assault are for resolution by the jury.").

The evidence presented in the case *sub judice* establishes that defendant hit his one-year-old son at least once with a belt, that the child began to cry after being hit, and that the child suffered a visible bruise to his head as a result of being struck by the belt. Both McDowell County Sheriff's Deputy David Marler ("Deputy Marler") and McDowell County Social Worker Michael Lavender ("Lavender") testified regarding the bruise above the child's hairline. Lavender's photographs of the bruise were also admitted into evidence, thereby allowing the jury to observe the extent of O.R.'s injury. Viewing the evidence in the light most favorable to the State, we conclude that the State presented sufficient evidence to allow a reasonable jury to infer that O.R. suffered a serious injury as a result of the assault. Therefore, we hold that the trial court did not err in denying defendant's motion to dismiss the charge of felony child abuse against O.R.

[2] Defendant next assigns error to the trial court decision not to arrest judgment on the charge of assault with a deadly weapon inflict-

ing serious injury. Defendant argues that the same conduct was used to prove the serious bodily harm of the kidnapping charge and the serious injury element in the assault charge. Thus, defendant argues, the constitutional guaranty against double jeopardy prohibits defendant from being sentenced to both first-degree kidnapping and assault with a deadly weapon inflicting serious bodily injury. We disagree.

N.C. Gen. Stat. § 14-39(a) defines the law of kidnapping in North Carolina. It provides:

Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed[.]

N.C. Gen. Stat. § 14-39(a) (2003). Kidnapping is elevated to the first degree where the person kidnapped either was not released in a safe place or was seriously injured or sexually assaulted. N.C. Gen. Stat. § 14-39(b). N.C. Gen. Stat. § 14-32(b) defines the law of assault with a deadly weapon inflicting serious injury. It provides:

Any person who assaults another person with a deadly weapon and inflicts serious injury shall be punished as a Class E felon.

N.C. Gen. Stat. § 14-32(b) (2003).

It is well established that more than one criminal offense may arise out of the same course of action or conduct. *State v. Fulcher*, 294 N.C. 503, 523, 243 S.E.2d 338, 351-52 (1978). For example, a defendant may break into a home intending to commit a larceny, and after breaking and entering into the home, actually commit the larceny. In such a case, the defendant may properly be convicted of the breaking and entering with an intent to commit larceny, as well as the larceny itself. *Id.* at 524, 243 S.E.2d at 352. Likewise, the Constitution does not forbid conviction for both felony kidnapping by restraining and another felony committed after such restraint, provided that the restraint constituting the kidnapping is "a separate, complete act, independent of and apart from the other felony." *Id.*; *see State v. Shue*, 163 N.C. App. 58, 63, 592 S.E.2d 233, 237 (2004) ("[W]here the first offense is committed with the intent to commit the second

offense, followed by the commission of the second offense . . . a defendant may be convicted of both offenses.").

In *Fulcher*, the Court found that the defendant kidnapped his victims for the purpose of facilitating felony crimes against nature. The Court concluded that "[t]he restraint of each of the women was separate and apart from, and not an inherent incident of, the commission upon her of the crime against nature, though closely related thereto in time." 294 N.C. at 524, 243 S.E.2d at 352. In *State v. Oxendine*, this Court concluded that asportation of a rape victim is sufficient to support a charge of kidnapping if the defendant could have perpetrated the offense when he first threatened the victim but instead removed the victim to a more secluded area to prevent others from witnessing or hindering the rape. 150 N.C. App. 670, 676, 564 S.E.2d 561, 565 (2002), *disc. rev. denied*, 356 N.C. 689, 578 S.E.2d 325 (2003). In *State v. Washington*, the defendant argued that his restraint of the victim was an inherent part of his assault on the victim, and thus could not be used to support a kidnapping charge. 157 N.C. App. 535, 538, 579 S.E.2d 463, 465 (2003). Testimony in that case tended to show that the defendant grabbed the victim from his car and threw the victim to the ground and then onto the hood of the car. *Id.* at 538, 579 S.E.2d at 466. The defendant restrained the victim by parking his vehicle directly in front of the victim's vehicle and by "continu[ing] to hold [the victim] down while assaulting him." *Id.* at 538-39, 579 S.E.2d at 466. Under the facts of that case, this Court held that the restraint was separate and distinct from the assault, and that therefore it was proper to send the kidnapping charge to the jury. *Id.* at 539, 579 S.E.2d at 466.

In the case *sub judice*, the evidence presented at trial established that at some point during her altercation with defendant, Valdez fled from inside the home screaming, in an attempt to call for help. Defendant chased Valdez outside and caught her in their front yard. Defendant then grabbed Valdez from behind, dragged her back inside by her hair, and then began to beat her again. As a result of the altercation, Valdez suffered numerous bodily injuries and bruises that remained on her body for six weeks. Although Valdez cannot recall exactly when during the altercation she was beaten with the belt and gun, in his admitted confession, defendant stated that once he had dragged Valdez back inside, he picked up a knife he had dropped while pursuing Valdez and threatened her with it. He further stated that after dragging Valdez back inside, he located his gun and "hit [Valdez] once or twice in the face with the gun." Defendant also admitted to hitting Valdez with the belt several times after he had

dragged her back inside. We conclude the State presented sufficient evidence to support a finding that defendant dragged Valdez back inside his home for the purpose of assaulting her with a deadly weapon.

Once defendant dragged Valdez back inside the house, the crime of kidnapping was complete, irrespective of whether the contemplated assault with a deadly weapon ever occurred. *See Fulcher*, 294 N.C. at 524, 243 S.E.2d at 338. Defendant could have committed the assault on Valdez when he caught her in the yard. However, defendant chose to drag Valdez back inside to prevent others from witnessing him then beat Valdez with his fists, gun, and belt. Therefore, we conclude that the restraint and removal of Valdez was separate and apart from, and not an inherent incident of, the commission of the assault with a deadly weapon.

In Case No. 02 CRS 52905, defendant was indicted for "willfully and feloniously" assaulting Valdez "with a knife, a handgun, and fist, a deadly weapon, with the intent to kill and inflict serious injury." In Case No. 02 CRS 52904, defendant was indicted for "willfully and feloniously" kidnapping Valdez, "by unlawfully confining and restraining and removing her from one place to another, without [her] consent, and for the purpose of doing serious bodily injury to [her], and terrorizing [her]." Although the State may have been required to prove Valdez suffered serious bodily injury in order to show defendant's purpose in restraining and removing her, this alone does not mandate the application of the principles of double jeopardy to arrest judgment on the assault with a deadly weapon charge. *State v. Martin*, 47 N.C. App. 223, 236, 267 S.E.2d 35, 42, *appeal dismissed and disc. review denied*, 301 N.C. 238, 283 S.E.2d 134, 135 (1980). In *Martin*, we concluded that "[t]he gist of the offense proscribed by G.S. 14-39 is the unlawful, nonconsensual confinement, restraint or removal of victim, for the purposes of committing certain acts specified in the statute." *Id.* Thus, as in *Martin*, we now conclude that "the intent of the legislature in establishing the punishment for kidnapping was to impose an indivisible penalty for restraint and removal for specified purposes, no hypothetical part of which penalty represents a punishment for" defendant's actions after completion of the kidnapping. *Id.* at 236, 267 S.E.2d at 43. Therefore, we hold that the trial court did not err in refusing to arrest judgment on defendant's assault with a deadly weapon charge.

For the foregoing reasons, we hold that the defendant received a trial free of prejudicial error.

**IN RE J.D.**

[164 N.C. App. 176 (2004)]

No error.

Judges LEVINSON and THORNBURG concur.