STEELMAN, Judge.
A jury found defendant guilty of felonious child abuse inflicting serious physical injury, a Class E felony. Defendant received an active sentence from the presumptive range of twenty-nine to fourty-four months. Defendant appeals.
The State's evidence tended to show the following: On 16 May 2003, eleven-month-old T.P. arrived in the Craven Regional Medical Center's emergency room with a mid-shaft, spiral fracture of his right femur. The next day, orthopaedic surgeon William B. Wheatley, MD, operated on T.P. to set the bone and placed the child in a "spica cast, which is a long-legged cast that goes to the foot up essentially to the chest[,]" for six weeks. Given the nature ofthe fracture and the fact that T.P. was not yet walking, Dr. Wheatley suspected the injury stemmed from abuse.
T.P.'s mother, Abbey, began dating defendant in January of 2003, and was living with him at the time of T.P.'s injury. On 16 May 2003, Abbey went to work at 5:00 p.m. and left defendant alone with T.P., who was in his walker "laughing and playing[.]" Within ten minutes of her arrival at work, Abbey received a telephone call from defendant, who said that she "needed to come home, he thought [T.P.]'s leg was broken." Abbey returned home immediately and found defendant in the kitchen holding T.P., who was crying and whose leg "was limp." Defendant gave Abbey the following account of T.P.'s injury:
He had went outside to smoke a cigarette. He came back in and heard a crash. He said it sounded like the crib was falling apart. And he heard [T.P.] screaming. He went in there and my crib was solid on the two walls where [T.P.'s] head and his footboards were. [Defendant] said he had climbed up with his feet, along the flat piece, and somehow his foot got all the way up, into the hole, and his body shifted over the side of the crib, and that he was hanging there when he walked into the room.
Abbey took T.P. to the hospital with her neighbor.
Believing that defendant would never hurt T.P., but knowing he had previously pled guilty to a charge of misdemeanor child abuse, Abbey and the neighbor decided to tell the police that the neighbor had been in the house with T.P. when the injury occurred. According to Abbey, defendant had explained the events leading to his prior conviction as follows:
He told me . . . that his ex-girlfriend had left him alone with her daughter, and that she had went into seizures and fallen off the top of a bunk-bed and hit her head on the way down. And they charged him with Misdemeanor Child Abuse.
Defendant told Abbey he had pled guilty because he "was scared" and "didn't know what was going to happen." Based on defendant's description of the girl's injuries, Abbey "figured there was no way that he did that to a little girl and wasn't in jail."
As planned, Abbey initially told police that her neighbor was in the house with T.P. at the time of his injury. When the neighbor later refused to participate in the false story, Abbey told police "the truth[.]"
New Bern Police Detective B.J. Cumiskey interviewed defendant, Abbey, and the neighbor on 19 May 2003. When asked what happened to T.P., defendant said "he didn't know, he wasn't there." When apprised of the disparity between her neighbor's story and her own, Abbey admitted that "defendant was actually watching the baby." Cumiskey then confronted defendant, who acknowledged "that he had in fact lied, that he had been arrested in Jones County for a similar incident, child abuse, and that he was basically railroaded and he did not want that to happen to him again." Defendant told Cumiskey that he had "heard what sounded like the crib falling apart, and he went into where [T.P.] was sleeping, and he found [T.P.] with his leg in the top rung of the crib, hung over the . . . side rail."
After investigating the facts of defendant's prior conviction in Jones County, Cumiskey contacted defendant on 27 May 2003 andasked him to submit to a second interview, during which he gave the following statement to Craven County Sheriff's Detective John Whitfield:
I lied about the entire story, telling Social Services and the police that [T.P.] tried to crawl out of his crib and fell . . . . I was afraid to tell the truth because of what happened before, in Jones County.
I have now decided to tell the truth, which is that Abbey left for work and left [T.P.] in his crib. . . . I got him up and tried to put him in the walker. He didn't want to get in the walker. He held his legs together, and I pulled his legs apart. I pulled out and down on his right leg, and I heard a snap.
Defendant told Whitfield that he loved and would never hurt T.P. He conceded having "a problem with anger management[,]" but stated, "I am willing to get help and go through therapy if I need to." Defendant signed the statement after reviewing it.
Defendant's former girlfriend, Casey, lived with defendant during the first half of 2001 in Jones County, North Carolina with her two-year-old daughter, L. On the night of 24 May 2001, Casey left their residence at approximately 10:30 p.m. to go to the convenience store. L. was in bed asleep and defendant was awake. When Casey returned home thirty minutes later, defendant ran outside and told her "there was something wrong with the baby, she was having trouble breathing." He told Casey that he heard a "thump" sound from L.'s bedroom. When he went to check on her, he found her "gasping for air." L. was air-lifted to Pitt Memorial Hospital in Greenville, where she remained for two weeks with bleeding on the left side of her brain and behind her eyes. At trial defendant testified that when Abbey left for work on 16 May 2003, T.P. was in his crib "fussing and crying." Defendant decided to bring T.P. into the living room. As he was trying to put T.P.'s legs into his walker, defendant "spread his leg apart and like pulled him down, to try to get him in the walker, and his leg popped." Defendant was not angry or upset and did not believe he had done anything wrong in attempting to get T.P. into the walker. He claimed it was Abbey who decided they should lie to the police and who made up the story about T.P. falling from his crib. Defendant went along with Abbey's story, because he did not want to get anybody else in trouble. He ultimately told the truth in his written statement to Whitfield.
The trial court denied defendant's renewed motion to dismiss at the conclusion of all the evidence.
In defendant's first assignment of error he contends the trial court erred in admitting evidence of his prior act of child abuse under Rule 404(b) of the Rules of Evidence for the purpose of showing absence of accident at the time of the alleged abuse in this case. Defendant asserts he did not claim T.P. was injured in an accident. Rather, he testified that he had no intent to injure the child when attempting to place him in his walker.
Having reviewed the relevant portions of the trial transcript, we find defendant has failed to preserve this issue for appellate review. "A defendant waives any possible objection to testimony by failing to object to this testimony when it is first admitted." State v. Davis, 353 N.C. 1, 19, 539 S.E.2d 243, 256 (2000), cert.denied, 534 U.S. 839, 151 L. 3d. 2d 55 (2001). In the case before us, Abbey testified without objection concerning defendant's prior abuse of L. On cross-examination, defense counsel asked her, "[b]ut you knew that [defendant] had been - had pled guilty to misdemeanor child abuse, did you not?" Thereafter, Casey testified without objection regarding the incident with L., as well as defendant's proffered explanation that he heard a noise from L.'s room and discovered she had fallen off of her bed. Only when the State sought to introduce a copy of his criminal judgment from Jones County did defendant object. By allowing into evidence both the circumstances surrounding the abuse of L. and the fact of his guilty plea to misdemeanor child abuse, defendant waived any objection to subsequent iterations thereof. Moreover, defendant has not assigned plain error on appeal. N.C.R. App. P. 10(c)(4).
However, we have reviewed the transcript in this matter and further conclude that the evidence objected to was properly admitted under Rule 404(b) to show the absence of accident. Accordingly, this assignment of error is without merit.
In defendant's second assignment of error he contends the trial court erred in denying his motion to dismiss, arguing "there was no evidence of serious bodily injury and because there was insufficient evidence that he intended to inflict injury to [T.P.]."
In reviewing the denial of a motion to dismiss, we must determine whether the evidence, viewed in the light most favorable to the State, would allow a reasonable juror to find the defendantguilty "of each essential element of the offense charged, or of a lesser offense included therein[.]" State v. Earnhardt, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982) (citations omitted). Here, defendant was indicted for the Class C felony of child abuse inflicting "serious bodily injury" under N.C. Gen. Stat. § 14-318.4(a3), but was convicted of the lesser, Class E felony of child abuse inflicting "serious physical injury" under N.C. Gen. Stat. § 14-318.4(a). The trial court did not instruct the jury on the greater offense, finding no evidence to support a finding of "serious bodily injury" as defined by statute. Therefore, we need not determine if the State introduced sufficient evidence to support the submission of the Class C felony to the jury.
In order to convict a defendant for felony child abuse, the State must prove (1) the defendant is the parent or caretaker of a child under the age of 16; (2) the defendant "intentionally inflicte[d] any serious physical injury upon or to the child or . . . intentionally committ[ed] an assault upon the child;" and (3) the abuse inflicted by the defendant resulted in "serious physical injury." N.C. Gen. Stat. § 14-318.4(a) (2004); State v. Romero, ___ N.C. App. ___, ___, 595 S.E.2d 208, 210 (2004). Although the State must prove the defendant intentionally assaulted or injured the child, it is not required to prove the defendant had the specific intent to inflict serious injury. State v. Campbell, 316 N.C. 168, 172, 340 S.E.2d 474, 476 (1986). For purposes of this offense, "serious physical injury" is an injury that causes "great pain and suffering." State v. Phillips, 328 N.C. 1, 20, 399 S.E.2d 293,303, cert. denied, 501 U.S. 1208, 115 L. Ed. 2d 977 (1991).
The trial court properly denied defendant's motion to dismiss. The State adduced substantial evidence that T.P., a pre-ambulatory infant child, sustained a spiral fracture in the middle of his femur while in the sole care of defendant. Dr. Wheatley described the fracture as "a rotational type of injury, where the bone breaks at the top and it rotates around in a spiral fashion." Defendant lied to both the police and the child's mother about the cause of the injury, using a story substantially similar to the story he used in attempting to avoid responsibility for a prior act of child abuse upon L., to which he ultimately pled guilty. Defendant's third explanation, that he accidentally hurt T.P. while moving him from his crib to his walker, was contradicted by Abbey's testimony that T.P. was already in his walker when she left for work. The nature of T.P.'s injury and the surrounding circumstances support a finding that defendant inflicted the injury intentionally. See State v. Riggsbee, 72 N.C. App. 167, 171, 323 S.E.2d 502, 505 (1984). Moreover, a fractured femur requiring surgery and six weeks in a full-body cast satisfies the "serious physical injury" standard of N.C. Gen. Stat. § 14-318.4(a). See Romero, __ N.C. App. at ___, 595 S.E.2d at 211 (finding sufficient evidence of serious physical injury where "the child suffered a visible bruise to his head as a result of being struck by [a] belt").
Defendant has identified a clerical error on the judgment. Although he was convicted of and sentenced for the Class E felony of child abuse inflicting serious physical injury under N.C. Gen.Stat. § 14-318.4(a), the judgment shows a conviction for child abuse inflicting serious bodily injury under N.C. Gen. Stat. § 14-318.4(a3). The references on the judgment to "ser[ious] bod[i]ly inj[ury]" and to N.C. Gen. Stat. § 14-318(a3) are erroneous and should be corrected by the trial court.
In defendant's third and final assignment of error he "abandons" a claim of ineffective assistance of counsel, asking that it be dismissed without prejudice so that defendant may raise the issue later in a post-conviction motion for appropriate relief. Because defendant has not particularized the alleged deficiencies of his counsel, we cannot determine whether his claim is fully reviewable on direct appeal. See State v. Fair, 354 N.C. 131, 166-67, 557 S.E.2d 500, 524-25 (2001), cert. denied, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002). Accordingly, we decline to address whether this claim is subject to the procedural bar of N.C. Gen. Stat. § 15A-1419(a)(3) (2003), if raised in a future post-conviction motion. See generally State v. Hyatt, 355 N.C. 642, 668, 566 S.E.2d 61, 78 (2002)(requiring defendants to raise on direct appeal "those [ineffective assistance of counsel] claims on direct review that are apparent from the record"), cert. denied, 537 U.S. 1133, 154 L. Ed. 2d 823 (2003).
NO PREJUDICIAL ERROR; REMANDED FOR CORRECTION OF CLERICAL ERROR IN JUDGMENT.
Judges HUNTER and ELMORE concur.
Report per Rule 30(e).