STATE OF NORTH CAROLINA v. CARLOS LEE WILLIAMS

No. COA06-1309

(Filed 3 July 2007)

**1. Child Abuse and Neglect— felonious abuse-sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of felonious child abuse inflicting serious physical injury where there was sufficient evidence that defendant intentionally inflicted injury that proved to be serious upon a nine-year-old child in his care by beating him multiple times with a belt.

**2. Appeal and Error— preservation of issues—failure to object—not giving instruction**

Defendant waived any objection to the trial court's failure to inform the jury that it had sustained defendant's objection to certain testimony where it is not clear that the objection was sustained, defendant did not move to strike, and defendant did not argue plain error. Even if there was error, the testimony was not sufficiently prejudicial to warrant a new trial.

**3. Child Abuse and Neglect—felonious abuse—judgment— correction of clerical error**

A judgment and commitment for felonious child abuse inflicting serious bodily injury as defined by N.C.G.S. 14-318.4(a3), a Class C felony, was corrected to show that defendant was found guilty of the lesser included offense of felonious child abuse inflicting serious physical injury as defined by N.C.G.S. § 14-318.4(a), a Class E felony.

Appeal by defendant from judgment entered 26 April 2006 by Judge W. Allen Cobb, Jr. in Wayne County Superior Court. Heard in the Court of Appeals 25 April 2007.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Kimberly Duffley, for the State.*

*Cheshire, Parker, Schneider, Bryan & Vitale, by John Keating Wiles, for defendant-appellant.*

HUNTER,. Judge.

Carlos Lee Williams ("defendant") was convicted of felony child abuse inflicting serious injury on 26 April 2006. Defendant appeals this conviction. After careful consideration, we find no error in the trial but remand to correct a clerical error.

D.H. is the alleged victim in this case and is the nine-year-old son of defendant. D.H. did not live with defendant but did visit him periodically. On 20 March 2005, D.H. went to visit defendant. The following day, D.H.'s cousin, Quadrick, came over to spend the weekend with defendant and D.H. On 22 March 2005, defendant allowed the two boys to play with a slingshot and then allowed the boys to shoot at bottles with a BB gun. After approximately fifteen minutes, defendant told the children that the gun was "out of bullets[,]" and they went inside for a few hours.

Quadrick suggested that they go back outside and he and D.H. brought the BB gun back outside. D.H. held the trigger end of the gun and Quadrick held the barrel end. Defendant, who was at a neighbor's house at the time, noticed that D.H. was pointing the gun at Quadrick and yelled at the boys to " '[p]ut that gun down.' " Quadrick dropped his end of the gun and it went off shooting Quadrick.

Defendant ran over to D.H. and sent him to his room. D.H. testified that defendant made him take off all of his clothes except his underwear, and then started beating him with a belt. D.H. went on to testify that the beating lasted for ten to fifteen minutes, then defendant took a break for approximately five minutes, and then beat him for another twenty minutes. After a second five minute break, D.H. testified that he was beaten with the belt for another twenty-five minutes. D.H. then testified that defendant struck him with a belt for the fourth time another twenty-five minutes. In all, D.H. testified that defendant struck him with a belt for at least forty minutes and as much as an hour and forty minutes. D.H. also testified that defendant

had him take a bath after the beatings. When D.H. returned to his mother's home, his mother noticed bruises on his arms, called Social Services, and took D.H. to the emergency room.

At the hospital, D.H. told the doctor that his father had beaten him, and he spoke with a detective who took pictures of his injuries. At trial, D.H. testified that he wore bandages for approximately one week and showed the jurors scars on his arms and legs. According to D.H., the scars were the result of injuries sustained while defendant beat him.

Aside from D.H.'s testimony regarding defendant's allegedly felonious conduct, and pertinent to the disposition of this appeal, D.H. stated that "earlier on in the year like in January, or maybe the 1st um [sic] day of the new year, [defendant] was—he was cussing at my mom and was like that he was going to start shooting people because it was a new year and stuff." Defense counsel objected, but the record does not disclose that the trial court provided counsel with a ruling on that objection or that defense counsel moved to strike the answer.

An expert in pediatric medicine, Dr. Horton, testified that he was called by an emergency room physician around 2:00 a.m. on 21 March 2005 and went to the hospital. Dr. Horton examined D.H. and discovered multiple bruising, abrasions, shallow lacerations, swelling, and concluded that D.H.'s condition was "[m]oderately to seriously severe." Dr. Horton admitted D.H. to the hospital to watch for the development of a condition called "compartment syndrome, where through injury the soft tissues of an extremity can swell and cause the blood supply to be cut off[.]" Dr. Horton was also concerned that rhabdomyolysis could develop. Rhabdomyolysis is a condition in which injured muscles release a protein that can poison blood, causing electrolyte level problems that can lead to cardiac and cognitive problems and perhaps acute renal failure. Testing for those problems proved negative. D.H., however, was diagnosed with "[n]onaccidental trauma."

Defendant's father and D.H.'s grandfather, Albert Lee Williams, testified that when he arrived at defendant's house D.H. was sitting in a chair and looked "like he was kind of mad, like he was puffed up; there was something going on," but that he did not see any bruises on D.H. He also testified that D.H. had his clothes on. Williams went to the hospital, and while there, saw bruises on D.H.

Defendant's brother, Ernesto Williams, testified that he had been at defendant's home and did not see defendant hit D.H. with a belt, and that to his knowledge there was never any beating. Defendant's neighbor, on the hand, testified that she saw defendant strike D.H. with the belt four times. She later took D.H. back to his mother's and testified that she thought "everything was fine[.]"

Defendant testified in his own defense. After the BB gun incident, defendant stated that he "took [his] belt off and hit [D.H.] a couple times on the butt," and that he "spanked him again a couple more times." Once inside the house, defendant stated that he spanked D.H. "a couple more times to get him into [his] room." Once in the room, defendant stated that he "beat him for like 10 or 15 minutes." Defendant maintains that there were not four beatings but only one and that D.H. kept his clothes on throughout. Defendant stated on cross-examination that the beatings were not intentional and that some of the injuries to D.H. likely occurred when D.H. had bumped into something.

At the close of the evidence, the trial court denied defendant's motion to dismiss. The court instructed the jury on the Class C felony defined by N.C. Gen. Stat. § 14-318.4(a3) (2005), and the lesser included offenses of the Class E felony defined by N.C. Gen. Stat. § 14-318.4(a), and a misdemeanor offense defined by N.C. Gen. Stat. § 14-318.2(a) (2005). The two subsections of N.C. Gen. Stat. § 14-318.4 contain the same elements except that to be convicted of the Class C felony the defendant must inflict a bodily injury that poses a "substantial risk of death, or that causes serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ, or that results in prolonged hospitalization." N.C. Gen. Stat. § 14-318.4(a3). The Class E felony, on the other hand, requires that serious physical injury be inflicted on the child. The jury acquitted defendant of the Class C felony but found him guilty of the lesser included Class E felony. Defendant pled guilty to being a habitual felon, and the trial court sentenced him to a minimum term of imprisonment of 116 months and a maximum term of 149 months.

Defendant presents the following issues on appeal: (1) did the trial court err in denying his motion to dismiss the charge of felonious child abuse for insufficiency of the evidence; (2) did the trial court err in not striking portions of D.H.'s testimony on the grounds

that it was unduly prejudicial; and (3) did the trial court commit an error in its written judgment.

I.

**[1]** Defendant argues that the trial court erred in denying his motion to dismiss at the close of the State's evidence and again at the end of all the evidence on the grounds that there existed insufficient evidence to establish that defendant intentionally inflicted serious physical injury upon or to the child. We disagree. The standard of review on a motion to dismiss for insufficient evidence is whether "there is substantial evidence [] of each essential element of the offense charged[.]" *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "The trial court is *not* required to determine that the evidence excludes every reasonable hypothesis of innocence prior to denying a defendant's motion to dismiss." *Powell*, 299 N.C. at 101, 261 S.E.2d at 118. In determining whether there is substantial evidence it is well settled that all the evidence "is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal[.]" *Id.* at 99, 261 S.E.2d at 117.

Defendant was convicted of the Class E felony child abuse offense. The elements of this offense are: (1) the accused is "[a] parent or any other person providing care to or supervision of a child[;]" (2) such child is less than sixteen (16) years of age; and (3) such defendant intentionally inflicts serious physical injury upon or to the child or intentionally commits an assault upon the child which results in serious physical injury. N.C. Gen. Stat. § 14-318.4(a). Defendant concedes that the State has met the first two elements in this case but argues that there was insufficient evidence to establish that he intentionally caused a serious physical injury. Accordingly, we limit our discussion to the same.

A "serious physical injury" under the statute has been defined as an injury that causes " 'great pain and suffering.' " *State v. Williams*, 154 N.C. App. 176, 179, 571 S.E.2d 619, 621 (2002) (citation omitted). Factors helpful in determining whether an injury meets this standard are: "[1] hospitalization, [2] pain, [3] loss of blood, and [4] time lost from work." *State v. Romero*, 164 N.C. App. 169, 172, 595 S.E.2d 208,

210 (2004). Under the circumstances presented here, courts should also review whether the child was unable to attend school or other activities. We have previously held that "whether an injury is 'serious' is generally a question for the jury." *Id.* at 172, 595 S.E.2d at 211; *Williams*, 154 N.C. App. at 180, 571 S.E.2d at 622 (holding that "conflicts in the evidence as to [the victim's] level of activity and the extent, if any, to which she appeared to be in pain after the alleged assault are for resolution by the jury").

The evidence presented in the light most favorable to the State establishes that: Defendant beat D.H. four different times with a belt for a total time between forty minutes and an hour and forty minutes; D.H. was bleeding, short of breath (due to asthma), and vomited; and both D.H.'s arms were almost entirely covered with bruises, his legs were swollen and puffy, his buttocks were black and blue; and D.H. was in pain for two weeks.

Additionally, it is undisputed that D.H. was hospitalized after the incident. Dr. Horton testified that: D.H.'s injuries were "[m]oderately to seriously severe," the injuries were severe enough as to possibly cause rhabdomolysis and/or compartment syndrome, and D.H. complained of pain during his stay and was given medication to combat the pain and swelling.

. Viewed in the light most favorable to the State, we hold that the evidence was sufficient for a jury to reasonably infer that the injury inflicted by defendant caused D.H. great pain and suffering, and thus satisfied the statutory element of "serious physical injury." *See Romero*, 164 N.C. App. at 172, 595 S.E.2d at 211 (finding sufficient evidence to support a conviction under N.C. Gen. Stat. § 14.318.4(a) when the "defendant hit his one-year-old son at least once with a belt, that the child began to cry after being hit, and that the child suffered a visible bruise to his head"); *Williams*, 154 N.C. App. at 178-79, 571 S.E.2d at 621 (holding prolonged paddling that led to bleeding, swelling, and pain for more than a week constitutes sufficient evidence to support a conviction under N.C. Gen. Stat. § 14.318.4(a)).

Under N.C. Gen. Stat. § 14.318.4(a), the element of intent is "sufficiently established if a defendant intentionally inflicts injury that proves to be serious on a child of less than sixteen years of age in his care." *State v. Campbell*, 316 N.C. 168, 172, 340 S.E.2d 474, 476 (1986) (citation omitted). "He need not specifically intend that the injury be serious." *Id.* Given the evidence discussed above and Dr. Horton's testimony that D.H.'s injuries were "[n]onaccidental," we hold that the

evidence taken in the light most favorable to the State establishes the element of intent. The trial court did not err in denying defendant's motion to dismiss the charge of felonious child abuse.

## II.

**[2]** Defendant next argues that the trial court erred in failing to inform the jury that it sustained defense counsel's objection to testimony that defendant claims was prejudicial. The record, however, does not clearly support the proposition that defendant's objection was sustained. Regardless, defendant failed to move to strike the objectionable portion of D.H.'s testimony. Our Supreme Court has held that "[f]ailure to move to strike the unresponsive part of an answer, *even though the answer is objected to*, results in a waiver of the objection." *State v. Chatmam*, 308 N.C. 169, 178, 301 S.E.2d 71, 77 (1983). Thus, because defendant waived any objection made at trial and has not argued that the trial court committed plain error, we find no error. In any event, even were we to assume a trial court error on this issue, we do not find that the admission of this testimony was sufficiently prejudicial to warrant a new trial. Accordingly, defendant's assignments of error as to this issue are overruled.

## III.

**[3]** In his last argument, defendant requests that the written judgment and commitment reciting that defendant was guilty of felonious child abuse inflicting serious bodily injury as defined by N.C. Gen. Stat. § 14-318.4(a3), a Class C felony, be corrected to show that defendant was found guilty of the lesser included offense of felonious child abuse inflicting serious physical injury as defined by N.C. Gen. Stat. § 14-318.4(a), a Class E felony. We agree with defendant that this error should be corrected and the State does not oppose a remand to the trial court as to this issue. Accordingly, we remand to the trial court to correct this clerical error.

## IV.

In summary, we find that the trial court properly denied defendant's motion to dismiss the charges brought against him and we find no plain error in the admission of testimony. We remand to the trial court only to correct a clerical error.

No error; remand to correct clerical error.

Judges ELMORE and GEER concur.