IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-865

Filed 21 November 2023

Durham County, Nos. 20 CRS 50737-39, 20 CRS 590

STATE OF NORTH CAROLINA

v.

DOMINIQUE BUCK TUCKER

Appeal by Defendant from judgments entered 16 November 2021 by Judge David T. Lambeth, Jr., in Durham County Superior Court. Heard in the Court of Appeals 6 September 2023.

> *Attorney General Joshua H. Stein, by Assistant General Counsel South A. Moore and Solicitor General Fellow James W. Whalen, for the State.*
>
> *Kimberly P. Hoppin, for defendant.*

WOOD, Judge.

Dominique Tucker ("Defendant") appeals the trial court's entry of three consecutive terms of imprisonment for a total of 185-253 months for first-degree kidnapping, three counts of assault, and interfering with emergency communications. After careful review of the record and applicable law, we determine Defendant's preparation of his case was not irreparably prejudiced by his pretrial detention and Defendant received a fair trial, free from prejudicial error.

## I. <u>Factual and Procedural History</u>

Enomwoyi Moser ("Enomwoyi") lived in her mother Cynthia Moser's ("Cynthia") apartment in Durham with Cynthia and her grandson, K.P. Enomwoyi met Dominique Tucker ("Defendant") at church. Enomwoyi knew Defendant was married, and initially they were just friends. Eventually their relationship became more serious, and they began a physical relationship. Defendant came to live with Enomwoyi and Cynthia at their apartment because he needed an address change. Enomwoyi told Defendant that they needed to start to do "what's right" and stop "sleeping with each other under" the same roof. Refraining from having sex became an issue in their relationship.

Their relationship began to disintegrate in January 2020. Enomwoyi discovered Defendant had been handling her gun, and she did not approve because she knew he was a felon. Enomwoyi also discovered she had trichomoniasis, a sexually transmitted disease, and was very angry. She confronted Defendant about it, but he told her he "didn't catch anything[.]" Their relationship continued to deteriorate.

During the last week of January, Enomwoyi saw Defendant put a gun into his coat pocket after checking to make sure the magazine was in the gun. She told him he needed to get the gun out of Cynthia's apartment. Defendant denied having a gun. After this incident, the couple had "no good days."

On 29 January 2020, Enomwoyi returned home from work after 8:30 p.m. K.P. was asleep in Enomwoyi's bedroom, and Defendant and Cynthia were watching

television in Cynthia's room. As Enomwoyi feared would happen, she and Defendant started arguing. When Enomwoyi started to collect a blanket and pillow for Defendant to sleep in the living room, "chaos" erupted as Defendant began bringing up all the arguments they had been having.

While the couple were in the living room, Defendant head butted Enomwoyi by hitting his forehead to her forehead. Enomwoyi told Defendant if he put his hands on her again, she would call the police. The strike was very painful and left her dizzy and confused.

Enomwoyi then walked into the bedroom where K.P. was sleeping to make sure he was still asleep. Defendant followed behind her, "ranting and raging." After Enomwoyi again threatened to call the police, Defendant told her he would give her a reason to call the police. As Defendant "was standing behind [Enomwoyi] in [her] room by the door," he head butted her again, and she "went down." While Enomwoyi was down on the ground, Defendant kept punching her and started kicking her. During this beating, Enomwoyi shouted for Cynthia to call the police.

Cynthia heard Enomwoyi calling for her to call the police. Cynthia entered the room, telling Defendant, "don't hit her no more, don't put your hands on her." Defendant turned around and hit Cynthia, busting her lip.

Defendant then "went [back] into the bedroom" and resumed beating Enomwoyi. Enomwoyi again called out for Cynthia to call the police, but Defendant

took Cynthia's phone away and threw it. Cynthia retrieved her phone and called the police. She then went outside to try to get help.

Enomwoyi tried escaping the attack by crawling out of the room, but Defendant continued kicking her until he had kicked her back into the room. Enomwoyi wanted to get out of the apartment out of concern for K.P. and Cynthia, because she did not know if he might turn his attention to them, but Defendant blocked the door in front of her.

At some point, Enomwoyi was able to get up, but Defendant, who was behind her, snatched her back into the room by her hair. Enomwoyi had a hair weave in, and Defendant snatched it all off making her feel like she "was being skinned." He slung her by her ponytail back into the room, and she fell over the bed.

Defendant then began choking Enomwoyi, causing her not to be able to breathe. Defendant had a chokehold around Enomwoyi's neck, and she pleaded for her life. Enomwoyi seemingly blacked out at that point because she could not see or hear anything. When Enomwoyi regained consciousness, she noticed for the first time that K.P. had awakened and was watching what was happening. She did not know how long K.P. had been awake or watching. Enomwoyi grabbed K.P. and cradled him.

Defendant returned to the room and began punching Enomwoyi once again while she cradled K.P. Finally, Defendant left the room. When Enomwoyi saw he had left, she jumped up, closed the door, and locked it. Defendant once more returned

and started kicking the door. Enomwoyi hid K.P. in the closet to protect him, and felt she had to remove herself from the situation.

While Defendant continued kicking the door, Enomwoyi jumped out of the third floor bedroom window, landing on the ground on her right side back and hip. She believed she could not have escaped the room any other way that would not have caused her death. Enomwoyi then saw Defendant looking out of a window and was afraid of being attacked again. She managed to get up and hide. She then heard Defendant start his car and heard what she believed were two gunshots before seeing Defendant pull out of the parking lot and leave.

Enomwoyi suffered a range of injuries from Defendant's attack. She complained of "severe hip pain and pain all over her face" to an EMS responder. Her face was very swollen, and an eye was swollen shut. There was blood all over her face and a significant laceration under an eye. Enomwoyi was transported to the hospital in an ambulance. Enomwoyi suffered a fractured eye socket fracture and also suffered vision issues, such as a spray of light in her peripheral vision. Pressure in her eye socket prevented her from wearing her contacts. At the time of trial, Enomwoyi continued to experience stabbing pains in her eye with varying degrees of severity, memory loss, headaches, migraines, fatigue, weakness, and struggling to think and focus. She continues to have difficulty eating because of a throat injury due to the choking. As a result of jumping out the window, Enomwoyi has hip issues and will need a hip replacement.

Defendant was arrested the same night of the assault. An officer attempted to stop Defendant for speeding and driving with a missing headlight; however, Defendant did not pull over but instead sped away. After a high-speed pursuit involving multiple officers, Defendant pulled into a driveway, and the officers conducted a "high-risk" apprehension. The arresting officers were unaware that a "bolo" (be on the lookout) bulletin had been issued for Defendant for his assaults upon Enomwoyi and Cynthia.

On 30 January 2020, Defendant was arrested on the charges stemming from the assaults, and the magistrate set his bond at $200,000.00. Defendant did not post bond, remaining in custody. On 16 March 2020, a grand jury indicted him on the charges of possession of a firearm by a felon, first-degree kidnapping of Enomwoyi, assault by pointing a gun, assault by strangulation, assault inflicting serious bodily injury, assault in the presence of a minor, assault on a female, and interference with emergency communication. On 17 March 2020, Defendant was served the indictments while in custody. A bond of $50,000.00 was set for the additional charge of possession of a firearm by a felon. Because the magistrate determined the kidnapping charge involved an act of domestic violence, the magistrate did not set bond on the kidnapping charge and held the matter over for a judge to set the conditions of pretrial release pursuant to N.C. Gen. Stat. § 15A-534.1. Specifically, the magistrate ordered the State to produce Defendant before the next session of court held in Durham County or, if no session were held in the next forty-eight hours,

to produce him before a magistrate in forty-eight hours to determine the conditions of pretrial release. The State failed to comply with this order, and Defendant was not afforded the required pretrial detention hearing on the kidnapping charge. Defendant did not post bond on any of the charges and remained in custody.

On 14 September 2020, Defendant filed a motion to dismiss the kidnapping charge, arguing his "arrest" and detention since 17 March 2020 without a pretrial release hearing for the kidnapping charge violated N.C. Gen. Stat. § 15A-534.1 and required its dismissal. The following day, the trial court consolidated Defendant's charges into one set of pretrial release conditions, setting a combined bond of $250,000.00. Defendant did not post bond and remained in custody. On 12 October 2020, the trial court denied Defendant's motion to dismiss for failure to meet the requirements of N.C. Gen. Stat. § 15A-954(a)(4) (2022).

Defendant waived his right to a jury trial and a bench trial was held 8-16 November 2021. Defendant renewed his motion to dismiss the kidnapping charge at the start of the trial. The trial court denied the motion prior to the start of trial. The jury found Defendant not guilty of possession of a firearm by a felon, and guilty of first-degree kidnapping, assault by strangulation, assault inflicting serious bodily injury, assault on a female, and interfering with emergency communications. At the close of the State's evidence, at the close of all the evidence, and after the verdict, Defendant made motions to dismiss all the charges. The trial court denied each motion.

Following the verdict, the trial court imposed a total of three sentences to run consecutively. The trial court consolidated the charges of first-degree kidnapping and interference with emergency communication and sentenced Defendant to 130-168 months imprisonment. The trial court consolidated the charges of assault inflicting serious bodily injury, assault in the presence of a minor, and assault on a female and sentenced Defendant to a consecutive term of imprisonment of 36-53 months. The trial court sentenced Defendant to a third consecutive term of imprisonment of 19-32 months for the assault by strangulation charge. Defendant received credit for time served prior to trial.

Defendant gave oral notice of appeal in open court.

## II. Analysis

Defendant raises four arguments on appeal: (1) his kidnapping charge should be dismissed because the State failed to hold a pretrial release hearing related to that charge in violation of N.C. Gen. Stat. § 15A-534.1; (2) the trial court improperly convicted him of multiple counts of assault in violation of the prohibition against double jeopardy; (3) N.C. Gen. Stat. § 14-32.4 permits his conviction of assault inflicting serious bodily injury but not conviction of assault by strangulation; and (4) Defendant's conviction for kidnapping was not based on sufficient evidence. We address each argument in turn.

### A. Motion to Dismiss the Kidnapping Charge

A criminal defendant's motion to dismiss is reviewed *de novo*. *State v. Golder*, 374 N.C. 238, 249-50, 839 S.E.2d 782, 790 (2020). Similarly, whether a "defendant has met the statutory requirements of N.C. Gen. Stat. § 15A-954(a)(4) and is entitled to a dismissal of the charge against him is a conclusion of law" reviewed *de novo*. *State v. Williams*, 362 N.C. 628, 632, 669 S.E.2d 290, 294 (2008).

N.C. Gen. Stat. § 15A-954(a)(4) requires the trial court to dismiss a charge against a defendant if the trial court determines a "defendant's constitutional rights have been flagrantly violated and there is such irreparable prejudice to the defendant's preparation of his case that there is no remedy but to dismiss the prosecution." A defendant may demonstrate prejudice by showing he would have been released earlier had he received a pretrial hearing. *See State v. Thompson*, 349 N.C. 483, 501, 508 S.E.2d 277, 288 (1998).

For domestic violence crimes, including felonies perpetrated upon a person with whom the defendant lived, N.C. Gen. Stat. § 15A-534.1 (2022) requires a judge to hold a pretrial release hearing for the defendant within the first forty-eight hours from the time of arrest, and if a judge does not do so, then a magistrate must do so at the end of the forty-eight hour period.

To determine whether a defendant's pretrial detention violates N.C. Gen. Stat. § 15A-534.1, "it is appropriate to examine the importance of the private interest and the harm to this interest occasioned by delay; the justification offered by the Government for delay and its relation to the underlying governmental interest; and

the likelihood that the interim decision may have been mistaken." *Thompson*, 349 N.C. at 499, 508 S.E.2d at 286–87.

Here, Defendant had been detained since 17 March 2020 on the kidnapping charge without receiving a pretrial release hearing for this charge. Defendant did not file his motion to dismiss the charge until 14 September 2020, almost six months later. It was not until after Defendant filed his motion that he received a pretrial release hearing related to the kidnapping charge.

Defendant has a private interest in liberty, which is a fundamental right. *Id.* at 499, 508 S.E.2d at 287. However, the State's failure to hold a pretrial release hearing related to the kidnapping charge did not flagrantly violate that right due to the inadvertence of the State's mistake as well as the absence of prejudice, as explained below. N.C. Gen. Stat. § 15A-954(a)(4).

The State admits it failed to hold a pretrial release hearing related to the kidnapping charge; however, it tries to explain the failure as an inadvertent mishap due to the significant disruption to our Judicial Branch at the onset of Covid-19. Indeed, Covid-19 significantly disrupted the operations of the Judicial Branch at the onset of the pandemic; nevertheless, the failure to conduct a pretrial release hearing could be a violation of Defendant's statutory and constitutional rights. Assuming it is a violation here, we next examine whether the failure to provide a pretrial hearing was intentional and thus a flagrant violation of Defendant's constitutional rights. Here, the State complied with the statutory mandate for all of Defendant's other

charges and immediately arranged for a pretrial hearing after being made aware of the need for one upon the filing of Defendant's motion. Thus, there is merit to the State's contention it unintentionally withheld a timely pretrial release hearing regarding one of Defendant's charges. The inadvertence does not excuse the State; rather, it is relevant to show the absence of a flagrant constitutional violation.

Most compellingly, Defendant cannot show irreparable prejudice to the preparation of his case such that the trial court would have been required to dismiss the kidnapping charge. On 17 March 2020, Defendant had not posted the $200,000.00 bond following his 30 January 2020 arrest, so he was still incarcerated when he was arrested pursuant to the indictments of felon in possession of a firearm and kidnapping. After he was served these indictments, bond was set at $50,000.00 for the felon in possession of a firearm charge, and Defendant never posted that bond either. Therefore, even if the State had held a timely pretrial release hearing on the kidnapping charge, Defendant would not have been released. Even after the trial court consolidated Defendant's charges into a combined bond of $250,000.00 on 15 September 2020, Defendant did not post bond and remained in custody.

Defendant argues his preparation for his case was irreparably prejudiced due to the State's failure to comply with N.C. Gen. Stat. § 15A-534.1. Specifically, Defendant argues it is reasonable to infer the trial court would have found a mitigating factor that Defendant had a support system in the community, but it did not because of Defendant's confinement due to his detainment for the kidnapping

charge.  However, as noted, Defendant would have remained confined had the State complied with the statute because he never posted bond for any of his criminal charges.  Accordingly, Defendant cannot demonstrate irreparable prejudice to the preparation for his case.  N.C. Gen. Stat. § 15A-954(a)(4).

Finally, we consider the "likelihood that the interim decision may have been mistaken." *Thompson*, 349 N.C. at 499, 508 S.E.2d at 287.  We conclude the likelihood of mistakenly detaining Defendant was low because he already was in custody for other charges arising out of his assault of Enomwoyi.  The indictments on the felon in possession of a firearm and kidnapping also arose out of the assault on Enomwoyi and were obtained and served while he was incarcerated on the other charges.  Defendant was ultimately tried, convicted, and sentenced to 185-253 months in prison, and the trial court gave him credit for the time he spent in custody before trial.  Thus, the record demonstrates Defendant was not mistakenly detained.

## B. Multiple Assault Convictions

Defendant next argues there was insufficient evidence to convict him for multiple counts of assault because his actions constituted one continuous assault.  Defendant further argues, "in addition or in the alternative," his multiple assault convictions are not supported by the evidence insofar as the prohibition against double jeopardy prevents multiple convictions for the same offense.  *See State v. Ezell*, 159 N.C. App. 103, 106, 582 S.E.2d 679, 682 (2003).  Indeed, Defendant grounds his insufficiency of the evidence argument primarily on his double jeopardy argument.

However, "constitutional questions not raised and passed on by the trial court will not ordinarily be considered on appeal." *State v. Davis*, 364 N.C. 297, 301, 698 S.E.2d 65, 67 (2010) (brackets omitted). Therefore, Defendant requests this Court to exercise its discretion under N.C. R. App. P. 2 to suspend the rules and reach the merits of this argument. A defendant must demonstrate manifest injustice as well as merit for this Court to exercise its discretion as Defendant requests. *State v. Ricks*, 378 N.C. 737, 738, 862 S.E.2d 835, 837 (2021). For the following reasons, we conclude Defendant fails to demonstrate manifest injustice and merit, and therefore, we decline to apply N.C. R. App. P. 2 to address Defendant's double jeopardy argument.

"Whether the State presented substantial evidence of each essential element of the offense is a question of law; therefore, we review the denial of a motion to dismiss de novo." *Golder*, 374 N.C. at 250, 839 S.E.2d at 790. "Substantial evidence is the amount necessary to persuade a rational juror to accept a conclusion." *Id.* at 249, 839 S.E.2d at 790. (Brackets and ellipsis omitted). We consider the evidence "in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom." *Id.* at 250, 839 S.E.2d at 790.

"In order for a defendant to be charged with multiple counts of assault, there must be multiple assaults." *State v. Maddox*, 159 N.C. App. 127, 132, 583 S.E.2d 601, 604 (2003). "[T]o find [a] defendant guilty of two separate assaults . . . a distinct interruption" must have occurred between the assaults. *State v. Brooks*, 138 N.C.

App. 185, 189, 530 S.E.2d 849, 852 (2000). For example, there must be "an intervening event, a lapse of time in which a reasonable person may calm down, an interruption in the momentum of the attack, a change in location, or some other clear break delineating the end of one assault and the beginning of another." *State v. Robinson,* 381 N.C. 207, 218, 872 S.E.2d 28, 36 (2022). Contrarily, "the fact that a victim has multiple, distinct injuries alone is not sufficient evidence of a distinct interruption such that a defendant can be charged with multiple counts of assault." *Id.* at 218, 872 S.E.2d at 36.

Here, Defendant's second head butting of Enomwoyi followed by his punching and kicking her constitutes substantial evidence to support the conviction for assault causing serious bodily injury. This occurred in the bedroom. Second, Defendant's hitting Cynthia in the face, leaving her with a busted lip, constitutes substantial evidence to support the conviction for assault on a female. Third, Defendant "went into the bedroom" once more to beat Enomwoyi again. Therefore, there was both an interruption in the momentum of Defendant's attack on Enomwoyi when he paused to hit Cynthia and a change in location when Defendant returned to the bedroom to beat Enomwoyi again. Enomwoyi managed to get up to try to escape, and Defendant flung her to the bed and strangled her. Accordingly, substantial evidence supports Defendant's conviction for assault by strangulation. Fourth, Enomwoyi blacked out, woke up, and noticed K.P. had woken up. Defendant "came back" into the bedroom and punched Enomwoyi more, which K.P. witnessed. Therefore, there was both an

interruption in the momentum of Defendant's attack during the time Enomwoyi was blacked out and a change of location when Defendant returned to the bedroom to punch her. Accordingly, these facts constitute substantial evidence for Defendant's conviction of assault in the presence of a minor.

Because sufficient evidence supported each of Defendant's convictions for assault, we hold each offense was separate and distinct, and therefore, the trial court did not err in convicting Defendant of each charge of assault.

We further hold Defendant has failed to show merit in his argument that he did not commit multiple assaults upon Enomwoyi. Therefore, we decline to apply N.C. R. App. P. 2 to address Defendant's argument based on double jeopardy and hold the trial court did not err in convicting Defendant of numerous assaults because sufficient evidence supported the multiple convictions.

**C. Assault by Strangulation and Assault Inflicting Serious Bodily Injury**

Defendant argues under N.C. Gen. Stat. § 14-32.4 (2022), only his conviction for assault inflicting serious bodily injury may stand, while his conviction for assault by strangulation must be vacated. This Court has held that whether a defendant's convictions violate N.C. Gen. Stat. § 14-32.4 is an issue "of statutory construction" reviewed *de novo*. *State v. McPhaul*, 256 N.C. App. 303, 317, 808 S.E.2d 294, 305 (2017). The State contends this argument was not preserved for appellate review; however, when the "trial court acts contrary to a statutory mandate, the defendant's

right to appeal is preserved despite the defendant's failure to object during trial." *Id.* at 317, 808 S.E.2d at 305. Thus, we consider Defendant's argument.

N.C. Gen. Stat. § 14-32.4 provides that a trial court may convict a defendant for assault inflicting serious bodily injury "[u]nless the conduct is covered under some other provision of law providing greater punishment[.]" N.C. Gen. Stat. § 14-32.4(a). Two convictions are error if they are based on the same conduct. *State v. Prince*, 271 N.C. App. 321, 323, 843 S.E.2d 700, 702 (2020). Therefore, our analysis in the section above provides the answer here. If "[t]he record does not reveal that there was a 'distinct interruption' between two assaults," only one of the convictions may stand. *Id.* at 324, 843 S.E.2d at 703 (quoting *Brooks*, 138 N.C. App. at 189, 530 S.E.2d at 852).

Here, the initial head butting followed by punching and kicking Enomwoyi constitute evidence supporting Defendant's conviction for assault inflicting serious bodily injury. Before Defendant choked Enomwoyi, he had left the room, even if momentarily, to hit Cynthia, busting her lip, then returned to the bedroom to beat Enomwoyi more, pulled her back into the room by her hair, flinging her to her bed as she attempted to escape, and then choked her to the point of blackout. The evidence demonstrates an interruption in the momentum of the attack when Defendant paused to hit Cynthia, as well as a change in the locations of his assaults upon Enomwoyi when he left the bedroom to do so and then returned to beating and then choking Enomwoyi. Accordingly, we conclude there was a distinct interruption in the

assault, and both of Defendant's convictions must stand. *Prince*, 271 N.C. App. at 323, 843 S.E.2d at 702; *Robinson*, 381 N.C. at 218, 872 S.E.2d at 36.

### D. Sufficiency of the Evidence for Kidnapping

Finally, Defendant argues the evidence was insufficient for the jury to convict him of first-degree kidnapping because the act was not independent of the underlying assault. "Kidnapping is a specific intent crime, and therefore the State must prove that defendant unlawfully confined, restrained, or removed the victim for one of the specified purposes outlined in the statute." *State v. Rodriguez*, 192 N.C. App. 178, 187, 664 S.E.2d 654, 660 (2008). "[T]he act of kidnapping must be distinct from such a felony if the perpetrator is to be convicted of both kidnapping and the underlying felony." *State v. Cole*, 199 N.C. App. 151, 157, 681 S.E.2d 423, 428 (2009). N.C. Gen. Stat. § 14-39 "was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes." *State v. Fulcher*, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978). Notwithstanding, "it is well-established that two or more criminal offenses may arise from the same course of action." *State v. Muhammad*, 146 N.C. App. 292, 295, 552 S.E.2d 236, 237 (2001). Therefore, "a conviction for kidnapping does not violate the constitutional prohibition against double jeopardy where the restraint is used to facilitate the commission of another felony, provided the restraint is a separate, complete act, independent of and apart from the other felony." *Id.* at 295, 552 S.E.2d at 237.

For example, in *State v. Romero*, during the course of an altercation that occurred inside a home, the victim "fled from inside the home," the defendant caught up with her and grabbed her, and "dragged her back inside by her hair." 164 N.C. App. 169, 174, 595 S.E.2d 208, 212 (2004). After dragging the victim back inside, the defendant further assaulted her. *Id.* at 174–75, 595 S.E.2d 208, 212. The *Romero* court concluded: the "defendant chose to drag [the victim] back inside to prevent others from witnessing him then beat [the victim] with his fists, gun, and belt. Therefore, . . . the restraint and removal of [the victim] was separate and apart from, and not an inherent incident of, the commission of the assault with a deadly weapon." *Id.* at 175, 595 S.E.2d at 212 (2004).

Similarly, in *State v. Gayton-Barbosa*, the defendant committed multiple assaults on the victim. He kept the victim from leaving her house by repeatedly striking her with a bat. After she escaped the house, he chased her, grabbed her, and then shot her. There, the Court found, "Detaining [the victim] in her home and then again outside was not necessary to effectuate the assaults charged. These acts were committed 'separate and apart' from that which is inherent in the commission of the other felony." 197 N.C. App. 129, 140, 676 S.E.2d 586, 593 (2009) (quoting *Fulcher,* 294 N.C. at 523, 243 S.E.2d at 351).

Here, as in *Romero*, Defendant chose to drag Enomwoyi back into the bedroom by her hair and then choked her. The act of pulling Enomwoyi back into the bedroom by her hair, ripping it out, was separate and apart from the act of choking her. Also,

as in *Gayton-Barbosa*, Defendant's pulling Enomwoyi back in by her hair, thereby confining her to the bedroom, was not necessary to Defendant's assaults. Defendant could have assaulted or choked Enomwoyi anywhere in the apartment. Therefore, Defendant's confinement of Enomwoyi was separate and apart from his subsequent choking of her. Finally, when Enomwoyi woke up after passing out and locked the bedroom door, Defendant further confined her when he kicked at the bedroom door. Such was Enomwoyi's fear of Defendant that she felt there was no other way to escape, "[o]ther than dying," besides jumping out the window to leave the room. Therefore, Defendant's confinement of Enomwoyi by pulling her by the hair back into the bedroom, confining her in there by kicking at the locked door, and forcing her to escape by jumping from the third floor window, were separate, complete acts apart from Defendant's other assaults upon her. *Muhammad*, 146 N.C. App. at 295, 552 S.E.2d at 237. Accordingly, the trial court did not err by convicting Defendant of assault and first-degree kidnapping.

## III. <u>Conclusion</u>

For the foregoing reasons, we hold Defendant's preparation of his case was not irreparably prejudiced by his pretrial detention. Defendant received a fair trial, free from prejudicial error.

NO ERROR.

Judges GRIFFIN and STADING concur.