IN RE L.T.R. AND J.M.R., MINOR CHILDREN

No. COA06-296

(Filed 16 January 2007)

1. **Child Abuse and Neglect— abuse—serious physical injury—bruise**

The trial court did not err in a child abuse and neglect case by concluding that the four-year-old minor child's dark six-inch bruise on his right thigh which lasted well over one week was a serious physical injury by other than accidental means within the meaning of N.C.G.S. § 7B-101(1) because: (1) neither the statute

IN RE L.T.R. & J.M.R.

[181 N.C. App. 376 (2007)]

nor case law requires that the injured child receive medical attention to sustain a determination that the injury is serious; (2) ample evidence established that the minor child received the bruise from a severe blow delivered by respondent stepfather with a brush, and a doctor testified that it would have taken considerable force to cause such a bruise; and (3) although the evidence is silent as to the nature and amount of pain the minor child may have experienced when the blow was delivered, the child was still experiencing sufficient discomfort to utter "ow" several days later while rolling around on a bed watching cartoons.

**2. Child Abuse and Neglect— neglect—findings of fact**

The trial court did not err by concluding the juveniles were neglected as defined by N.C.G.S. § 7B-101(15) in that the minor children do not receive proper care, supervision, or discipline from respondent mother and stepfather, and live in an environment injurious to their welfare, because: (1) a parent's conduct in a neglect determination must be viewed on a case-by-case basis considering the totality of the evidence; and (2) all of the findings, and not simply the finding of fact regarding the "thumping" game that left a bruise on one child's face, show that the children's physical, mental, and emotional well-being was, at a minimum, at substantial risk of being impaired based on improper care.

**3. Child Abuse and Neglect— best interests of child—custody awarded to father**

The trial court did not abuse its discretion in a child abuse and neglect case by determining that a return to respondent mother's home was not in the best interests of the two minor children, because given the evidence establishing abuse and neglect in this case, the trial court's decision to award custody of the children to their father, to limit respondent mother's visits with the children by requiring them to be supervised, and to prohibit any contact between the children and respondent stepfather, was the result of a reasoned decision guided by the best interests of the juveniles.

**4. Child Abuse and Neglect— findings of fact—clear, cogent, and convincing evidence**

The trial court did not err in a child abuse and neglect case by its findings on adjudication and disposition, because: (1) although respondent stepfather challenges finding of fact 7 based

IN RE L.T.R. & J.M.R.

[181 N.C. App. 376 (2007)]

on the fact that it incorrectly states the birth month of the two minor children, these errors are immaterial to the court's adjudication decision; (2) although respondent stepfather challenges finding of fact 11, the Court of Appeals has already addressed the ample evidence finding that respondent struck one of the minor children with a brush; (3) with respect to finding of fact 12 in the adjudication order and finding of fact 8 in the disposition order, there was no evidence which would suggest or prove that the minor child's biological father caused the bruise on the back of the child's right thigh; (4) with respect to finding of fact 15, the mother admitted the minor child sustained a bruise on her face after a "thumping" game, and findings of fact which are supported by competent evidence are conclusive on appeal even in the face of conflicting evidence; (5) with respect to finding of fact 20, DSS records were admitted into evidence at the adjudication and disposition hearings, and included a report that case planning and family preservation services were offered to the family at three intervals; (6) in regard to the finding of fact about the minor child's bathing routine, respondent father gave his implied consent to this evidence by failing to object to the evidence when it was offered; and (7) although respondent contends the findings of fact in the adjudication and disposition orders are really conclusions of law, all but two of the challenged findings are statutorily required to be included, and the two remaining conclusions are supported by clear, cogent, and convincing evidence.

Appeal by Respondents from orders entered 17 June 2005 and 28 June 2005 by Judges Monica H. Leslie and Bradley B. Letts in Haywood County District Court. Heard in the Court of Appeals 31 October 2006.

*Haywood County Department of Social Services, by Ira L. Dove, for Petitioner-Appellee.*

*Michael E. Casterline for Respondent-Mother.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defenders Keischa M. Lovelace and Duncan B. McCormick, for Respondent-Stepfather.*

STEPHENS, Judge.

Respondents-Appellants ("Respondents") are the biological mother and the stepfather of the minor children, L.T.R. and J.M.R.

**IN RE L.T.R. & J.M.R.**

[181 N.C. App. 376 (2007)]

Respondents appeal the 17 June 2005 order of Judge Leslie adjudicating L.T.R. as abused and neglected, and J.M.R. as neglected. They also appeal the 28 June 2005 disposition order of Judge Letts granting custody of both children to their biological father. For the reasons discussed herein, we affirm the trial court's determinations.

The evidence tended to show that after a report was made to the Haywood County Department of Social Services ("DSS"), Allison Holmes, an investigator, observed a six-inch bruise on L.T.R.'s right thigh on 31 October 2004. She took pictures and asked L.T.R. about the bruise. L.T.R., who was almost four years old at the time, reported that Respondent Stepfather hit him with a brush. When Ms. Holmes asked the child why he had been hit, he responded that he "gets in trouble a lot." He told Ms. Holmes that he was frightened of his stepfather. Ms. Holmes also observed a bruise on the face of J.M.R., who reported that she received the bruise after falling in the bathtub. Ms. Holmes, however, believed the bruise looked like a fingerprint. J.M.R., who was five years old at the time, told Ms. Holmes that Respondent Stepfather "call[ed] [L.T.R.] stupid and yell[ed] at [L.T.R.]"

The biological father of the children testified that L.T.R. did not want to tell him about the bruise, but did so after being prompted by J.M.R. He said he became angry upon observing the bruise because the bruise was "a little too big of a bruise to see on a kid and not get irate." He further testified that he heard Respondent Mother tell L.T.R. on the phone to say that the bruise was the result of falling in the bathtub.

Lucy McFarland, a social worker and investigator with DSS, testified that Respondent Mother and Respondent Stepfather "adamantly denied that they had left a bruise on [L.T.R.]" Respondent Mother stated that J.M.R.'s bruised face was a result of a "thumping game." On 5 November 2004, Ms. McFarland took L.T.R. to Dr. Stephen Wall for a medical examination.

Dr. Wall, stipulated as an expert in pediatrics and the diagnosis and treatment of child abuse, examined L.T.R. and observed a faint bruise about six inches long over his right posterior upper thigh. He testified that L.T.R. told him that Respondent Stepfather hit him on the leg with a purple brush. Dr. Wall reviewed the photographs of the bruise that were taken by Ms. Holmes and opined that the bruise was "[a]t least several days old" when the photographs were made. He testified further that it was "[v]ery unlikely" that L.T.R.'s bruise was the

IN RE L.T.R. & J.M.R.

[181 N.C. App. 376 (2007)]

result of a fall in the bathtub. Regarding the amount of force it would take to cause such a bruise, Dr. Wall stated: "I would say that's considerable force to use on a child of that age to leave a bruise like that. And I would call it quite inappropriate." Elaborating, he likened the amount of force necessary to cause such a bruise to "someone [falling] from a pretty considerable height with great velocity . . . like an eight foot fall onto an edge[.]"

Respondent Mother testified that she did not see the bruise on L.T.R. until a social worker told her about it. She further testified that L.T.R. told her he "got" the bruise when he slipped and fell in the bathtub. Respondent Mother denied that she instructed L.T.R. on how to explain the bruise. However, Catherine Scott, the social worker who supervised visits between the children and Respondent Mother, testified that L.T.R. told her Respondent Mother had called Respondent Stepfather on the phone during a visit, and both of them told L.T.R. to say that he had fallen on a plastic toy boat in the bathtub and caused the injury. L.T.R. told Ms. Scott that Respondent Stepfather promised him a "big wheel" if he said that he had fallen on a boat. L.T.R. also told Ms. Scott, however, that Respondent Stepfather had hit him with a brush.

At the conclusion of the adjudication hearing, the trial court found and concluded that L.T.R. was an abused and neglected juvenile and that J.M.R. was a neglected juvenile. At the subsequent disposition hearing, Ms. Scott, on behalf of DSS, recommended that custody of L.T.R. and J.M.R. be given to the biological father. At the conclusion of the disposition hearing, the trial court ordered that Respondent Stepfather have no contact with the juveniles and that the biological father have custody of the children, with weekly supervised visitation by Respondent Mother. From the adjudication and disposition orders, Respondents appeal.

---

Respondent Mother brings forward three arguments to challenge the trial court's orders. Respondent Stepfather presents six arguments for our review,[1] three of which are identical to Respondent Mother's contentions. We therefore review and resolve these arguments together.

[1] Respondents first argue that "spanking" which does not result in serious physical injury is not abuse or neglect as a matter of law.

1. By motion filed 8 June 2006, Respondent Stepfather moved to withdraw one of his arguments from consideration on this appeal. That motion is hereby allowed.

Specifically, they assert that since the bruise on L.T.R.'s leg was temporary, faded away, and did not cause permanent scarring, the evidence is insufficient to sustain the trial court's determination that L.T.R. was abused or neglected. They argue further that there is no evidence the bruise L.T.R. received caused great pain and suffering, a requirement to sustain felony child abuse convictions under our criminal code. *See State v. Phillips,* 328 N.C. 1, 399 S.E.2d 293, *cert. denied,* 501 U.S. 1208, 115 L. Ed. 2d 977 (1991). To support their position, Respondents rely on *Scott v. Scott,* 157 N.C. App. 382, 579 S.E.2d 431 (2003) (holding trial court did not err in finding that evidence of a spanking with a belt which left no more than temporary red marks and required no medical attention did not establish abuse of the child), and *In re Mickle,* 84 N.C. App. 559, 353 S.E.2d 232 (1987) (holding evidence did not sustain an abuse finding where child was whipped once with a belt and another time with a switch, sustaining temporary marks and bruising each time). We are unpersuaded by Respondents' arguments.

In determining whether a child is neglected or abused, the trial court must make sufficient findings of fact to support its conclusions of law. *In re Ellis,* 135 N.C. App. 338, 520 S.E.2d 118 (1999). Furthermore, "findings of fact by the trial court in a nonjury trial have the force and effect of a jury verdict and are conclusive on appeal when supported by any competent evidence, even if the evidence could sustain contrary findings." *In re Norris,* 65 N.C. App. 269, 275, 310 S.E.2d 25, 29 (1983) (citations omitted), *cert. denied,* 310 N.C. 744, 315 S.E.2d 703 (1984). An abused juvenile is one whose parent or guardian:

a. Inflicts or allows to be inflicted upon the juvenile a serious physical injury by other than accidental means;

b. Creates or allows to be created a substantial risk of serious physical injury to the juvenile by other than accidental means;

c. Uses or allows to be used upon the juvenile cruel or grossly inappropriate procedures or cruel or grossly inappropriate devices to modify behavior[.]

N.C. Gen. Stat. § 7B-101(1) (2005). Section 7B-101 does not define "serious physical injury." However, this Court has recently considered what constitutes serious physical injury for purposes of felony child abuse charges in *State v. Romero,* 164 N.C. App. 169, 595 S.E.2d 208 (2004). We find the reasoning in *Romero* instructive here.

In *Romero*, we held that evidence that the defendant hit his one-year-old son at least once with a belt, that the child began to cry after being hit, and that the child suffered a visible bruise to his forehead as a result of being hit was sufficient to prove a serious physical injury and, therefore, to support the defendant's conviction of felony child abuse. This Court was not persuaded by defendant's argument that the child's bruise was not a serious injury because it was small and there was no evidence of the nature of the injury and degree of pain associated with the injury. Noting that neither the statute nor case law requires that the injured child receive immediate medical attention to sustain a determination that the injury is serious, this Court reasoned that whether an injury is serious is generally a question for the jury "because the nature of an injury is dependant [sic] upon the relative facts of each case[.]" *Id.* at 172, 595 S.E.2d at 211 (citations omitted).

For this reason, we find Respondents' reliance on *Scott v. Scott, supra,* unpersuasive.[2] The child in *Scott* was old enough to be in school and to have been suspended from school for fighting. He was old enough to have challenged his mother's authority by physical and verbal intimidation and mature enough to manipulate the estranged relationship between his parents to his favor. By contrast, L.T.R. had not yet reached his fourth birthday when the "spanking" at issue occurred. Instead of temporary red marks, L.T.R. had a dark, six-inch bruise, which lasted well over one week, on his right thigh. Ample convincing evidence established that L.T.R. received the bruise from a severe blow delivered by Respondent Stepfather with a brush. Moreover, although the evidence is silent as to the nature and amount of pain L.T.R. may have experienced when the blow was delivered, the child was still experiencing sufficient discomfort to utter "Ow" several days later while rolling around on a bed watching cartoons. Given the description of the bruise when it was discovered "[a]t least" several days later, the fact that L.T.R. experienced dis-

---

2. *Mickle, supra,* also fails to provide support for Respondents' position because it was decided under a statute (section 7A-517(1)) which is no longer in effect. That statute specifically required "a substantial risk of death, disfigurement, impairment of physical health, or loss or impairment of function of any bodily organ" to prove abuse of a juvenile. *See* N.C. Gen. Stat. § 7A-517(1) (Repealed by S.L. 1998-202). Given this statutory definition, the *Mickle* Court held that only "injuries permanent in their effect" would sustain a determination of abuse. *Mickle,* 84 N.C. App. at 560, 353 S.E.2d at 233. By contrast, Chapter 7B defines abuse for purposes of juvenile cases as the infliction of "serious physical injury[.]" N.C. Gen. Stat. § 7B-101(1). Neither the statute nor case law decided under this statute has imposed a requirement that the injury alleged to constitute abuse be permanent in nature.

comfort at that time from simply playing on a bed, and Dr. Wall's testimony that it would have taken "considerable force" to cause such a bruise, it strains reason and credulity to suggest, as Respondents do, that the infliction of this injury on this little boy cannot constitute abuse as a matter of law, because there is no direct evidence of "great pain or suffering."

We agree with the *Romero* decision that the nature of an injury is dependent upon the facts of each case and, based on the evidence before us in this case, we reject Respondents' derogation of the nature of the injury suffered by L.T.R. We hold that the evidence is sufficient to sustain the trial court's determination that L.T.R. "is an abused juvenile, as defined by N.C.G.S. 7B-101(1), in that the Respondent mother . . . and stepfather . . . inflicted or allowed to be inflicted upon the juvenile a serious physical injury by other than accidental means."

---

**[2]** By their next assignments of error, Respondents argue that the evidence was insufficient to support the trial court's determination that the juveniles "are neglected juveniles, as defined by N.C.G.S. 7b-101(15), in that the minor children do not receive proper care, supervision or discipline from Respondent mother . . . and stepfather . . . and live in an environment injurious to their welfare." In particular, Respondents take issue with the court's finding of fact that the fingertip-shaped bruise on J.M.R.'s face "was caused by the Respondent mother playing a thumping or flicking game with the five-year old child, causing bruising[.]" They argue that this finding of fact is inadequate to support the trial court's conclusion that the minor children were neglected. Again, we disagree with Respondents' position.

Section 7B-101(15) of the Juvenile Code defines a neglected child as one

> who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

N.C. Gen. Stat. § 7B-101(15) (2005). Relying on *In re Stumbo*, 357 N.C. 279, 582 S.E.2d 255 (2003), Respondents argue that in order to adjudicate a child neglected, there must be some physical, mental, or

emotional impairment as a consequence of the failure to provide proper care, supervision or discipline. In fact, the *Stumbo* Court recognized that, to sustain a finding of neglect in juvenile cases, our appellate courts have consistently required that there be either evidence of physical, mental or emotional impairment, " '*or a substantial risk of such impairment* as a consequence of the failure to provide "proper care, supervision, or discipline." ' " *Id.* at 283, 582 S.E.2d at 258 (citations omitted) (emphasis added); *see also In re Padgett*, 156 N.C. App. 644, 648, 577 S.E.2d 337, 340 (2003) (citation omitted) (holding that "[w]here there is no finding that the juvenile has been impaired or is at substantial risk of impairment, there is no error if all the evidence supports such a finding"). Conceding that the " 'thumping game' may not have been prudent," Respondents nevertheless contend that engaging in such a "game," even when it produced bruising of the child's face, is insufficient as a matter of law, under the *Stumbo* test, to establish neglect.

We first note that a parent's conduct in a neglect determination must be viewed on a case-by-case basis considering the totality of the evidence. *Speagle v. Seitz*, 354 N.C. 525, 557 S.E.2d 83 (2001), *reh'g denied*, 355 N.C. 224, 560 S.E.2d 138, *cert. denied*, 536 U.S. 923, 153 L. Ed. 2d 778 (2002). Second, we note that the *Stumbo* Court held the evidence before it to be insufficient as a matter of law to support a neglect determination because the *only* evidence presented in *Stumbo* was an anonymous caller's one-time observation of the two-year-old child naked and unsupervised in the driveway. As Justice Orr, writing for the majority, pointed out, there was no evidence of how long the child had been in the driveway, "the character of the surrounding area[,]" or whether the child had ever been naked outside unsupervised on any other occasion. *Stumbo*, 357 N.C. at 282, 582 S.E.2d at 258.

By contrast, in the case *sub judice*, the evidence before the trial court included (a) Respondent Mother's admission to "thumping" her five-year-old daughter in the face hard enough with her finger to leave a bruise shaped like her finger, as part of an ongoing "game"; (b) the bruising of L.T.R.'s upper leg from a severe blow delivered by his stepfather with a brush; (c) Respondents' effort to convince L.T.R. to lie about what happened to cause the bruise on his leg, including promising him a substantial gift in exchange for lying; (d) the fact that J.M.R. told the social worker that the bruise on her face came from falling in the bathtub, the same lie Respondents tried to exact from L.T.R., whereas Respondent Mother admitted that the bruise resulted from

her "thumping" J.M.R. in the face; and (e) Respondent Mother's admission that she left L.T.R. alone in the bathtub every night for twenty to thirty minutes after "turn[ing] the water on for him, mak[ing] sure it was the right temperature and let[ting] him have at it." The trial court made detailed findings of fact based on this evidence. All these findings, not simply the finding of fact regarding the "thumping" game, show that the children's physical, mental and emotional well-being was, at a minimum, at substantial risk of being impaired because of improper care. *See Padgett*, 156 N.C. App. at 649, 577 S.E.2d at 340. We conclude that the trial court did not err in adjudicating both children as neglected juveniles because neither "receive[d] proper care, supervision or discipline from [their] mother . . . and stepfather . . . and live[d] in an environment injurious to their welfare." These assignments of error are overruled.

---

[3] Respondents' third argument is that the trial court abused its discretion in determining that a return to Respondent Mother's home was not in the best interests of L.T.R. and J.M.R. Respondents also contest the court's order that visits between the children and Respondent Mother be supervised, and that there be no contact between Respondent Stepfather and the children. They rely on their arguments that the evidence is insufficient as a matter of law to support abuse and neglect of L.T.R. and neglect of J.M.R. As we have rejected Respondents' arguments on these issues, we overrule their assignments of error related to the trial court's 28 June 2005 order on disposition. We hold that, given the evidence establishing abuse and neglect in this case, the trial court's decision to award custody of the children to their father, to limit Respondent Mother's visits with the children by requiring them to be supervised, and to prohibit any contact between the children and Respondent Stepfather, was plainly the result of a reasoned decision guided by the clear best interests of these juveniles.[3] *See* N.C. Gen. Stat. § 7B-1110(a) (2005); *In re C.D.A.W.*, 175 N.C. App. 680, 625 S.E.2d 139 (2006).

---

3. We also note that, at disposition, the trial court took judicial notice of the separate juvenile case regarding L.R.P., the half-sibling of L.T.R. and J.M.R. Respondents are L.R.P.'s biological parents. By adjudication and disposition orders entered by Judge Letts on 28 June 2005 and 15 July 2005, respectively, L.R.P. was determined to be an abused, neglected and dependent juvenile after Respondent Stepfather was arrested for driving while intoxicated and driving with a revoked license on 5 March 2005. That day, Respondent Stepfather was in the vehicle with Respondent Mother, who had also been drinking alcohol. An eighteen-month-old L.R.P. was also in the vehicle. By these actions, Respondents violated a previous 16 December 2004 order which mandated them to not have L.R.P. around alcohol.

IN RE L.T.R. & J.M.R.

[181 N.C. App. 376 (2007)]

**[4]** We turn now to an examination of the additional arguments brought forward by Respondent Stepfather. By multiple assignments of error, Respondent Stepfather (1) contests a number of the trial court's findings on adjudication and disposition as not being supported by clear, cogent and convincing evidence; (2) challenges the court's adjudicatory finding related to L.T.R.'s bath time routine as being outside the scope of the juvenile petition alleging neglect; and (3) contends the court erred in denominating certain conclusions of law as findings of fact.

In an adjudication of abuse and neglect, the trial court's findings of fact which are supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings. *In re A.B.*, 179 N.C. App. 605, 635 S.E.2d 11 (2006). The adjudicatory findings of fact at issue are as follows:

7. That these matters involve [L.R.P.], born the 6th day of June 2003[4]; [L.T.R.], born the 3rd day of November 2000; and, [J.M.R.], born the 11th day of February 1999.

. . . .

11. That [Respondent Stepfather] hit [L.T.R.] with a brush causing this bruise. The force to cause such bruising was so considerable that the bruise was visible at least eight days after the incident when Dr. Steven [sic] Wall examined the child on the 5th day of November 2004.

12. That the bruise on [L.T.R.] was caused by [Respondent Stepfather] during the week of October 25, 2004 to October 29, 2004 while the child was in the custody of Respondent mother [] and stepfather [].

. . . .

15. That also on the 31st day of October 2004 Social Worker Holmes observed a fingertip-shaped bruise on the face of [J.M.R.]. This bruise was caused by the Respondent mother playing a thumping or flicking game with the five-year old child, causing bruising to [J.M.R.].

. . . .

---

4. L.R.P. is the half-sibling of L.T.R. and J.M.R. The juvenile case involving L.R.P. is not at issue in this appeal.

20. That at the time of the filing of petitions in these matters the Haywood County Department of Social Services had made the following reasonable efforts to prevent or eliminate the need for placement of the juveniles: family preservation services on at least four separate occasions; medical exam of [L.T.R.]; protection plan with Respondent mother and stepfather.

The disputed finding of fact in the order on disposition is:

8. That regarding the events related to the abuse and neglect of these children and in the presence of the children by [Respondent Stepfather], the abuse and neglect was not caused or in any way related to any actions by the [biological] father in this matter[.]

Respondent Stepfather challenges Finding of Fact 7 because it incorrectly states the birth month of J.M.R. and L.R.P. As Petitioner DSS correctly points out, these errors are immaterial to the court's adjudication decision. This argument is wholly lacking in merit and is rejected.

As for Respondent Stepfather's challenge to Finding of Fact 11, we have previously addressed the ample convincing evidence that supports the trial court's finding that Respondent Stepfather struck L.T.R. with a brush. The trial court heard evidence from the biological father, and DSS investigators Holmes and Scott, who testified L.T.R. consistently reported to them that the bruise on his leg was caused by being hit with a brush by Respondent Stepfather. Dr. Wall, to whom L.T.R. also reported that his stepfather hit him with a brush, testified that the injury was consistent with being forcefully struck with an object. This is clear, cogent and convincing evidence to support this contested finding of fact. In addition, with respect to Finding of Fact 12 in the adjudication order and Finding of Fact 8 in the disposition order, Respondent Stepfather argues that clear, cogent and convincing evidence does not exclude the biological father as a "potential cause" of the bruise. This argument, too, wholly lacks merit inasmuch as there is not a shred of evidence which would even suggest, much less prove, that L.T.R.'s father caused the bruise on the back of his right thigh. On the contrary, all the evidence establishes that the bruise was already several days old by the time the biological father discovered it, and that it resulted from the severe blow delivered to L.T.R.'s leg by Respondent Stepfather. We hold that these disputed findings are supported by sufficient evidence.

Turning to Respondent Stepfather's challenge to Finding of Fact 15, the evidence supporting this finding includes Ms. Holmes's testimony that she observed a fingerprint bruise on the face of J.M.R. on 31 October 2004, and the testimony of Ms. McFarland that Respondent Mother told her the bruise was caused by a "thumping game" wherein the children were struck in the face by the other family members. Respondent Stepfather argues this evidence is insufficient to support this finding of fact because J.M.R. told the social worker she sustained the bruise when she fell. We disagree. The clear and convincing evidence to support this finding of fact was provided by Ms. McFarland, who testified unequivocally that when she asked how J.M.R. sustained the bruise on her face, J.M.R.'s mother replied, "it was that thumping." We note again that findings of fact of the trial court which are supported by competent evidence are conclusive on appeal, even in the face of conflicting evidence. *In re Norris, supra.*

As for Respondent Stepfather's argument that Finding of Fact 20 was erroneously entered, we note first that the DSS records were admitted into evidence at the adjudication and disposition hearings. The records included a court report, dated 9 June 2005, which stated that case planning and family preservation services were offered to the family at three intervals from February to August 2003, January to April 2004, and November 2004 to May 2005. Additional documentation revealed family preservation services from March 2002 to June 2002. Plainly, there was plenary evidence before the court to support this finding of fact.

Respondent Stepfather additionally argues, however, that Finding of Fact 20 was erroneously included in the adjudication order because the trial court did not dictate this finding in open court, and because the DSS attorney who drafted the written order was limited by the judge to drafting jurisdictional findings. Because this finding is unnecessary to the trial court's determination that the minor children were abused and/or neglected, it is unnecessary for us to address this argument.

Respondent Stepfather next argues that the trial court erred in making findings of fact regarding L.T.R.'s bathing routine. Specifically, he argues that because the juvenile petition filed by DSS did not contain allegations regarding L.T.R.'s bathing routine and allege that activity as a basis for neglect of L.T.R., the finding of fact and conclusion of law regarding the bathing routine were erroneously entered because they were outside the scope of the petition. We disagree.

**IN RE L.T.R. & J.M.R.**

[181 N.C. App. 376 (2007)]

"The adjudicatory hearing shall be a judicial process designed to adjudicate the existence or nonexistence of any of the conditions alleged in a petition." N.C. Gen. Stat. § 7B-802 (2005). In this case, the petition stated in an attachment that "[t]he Respondent mother and her husband maintain that the bruise on [L.T.R.] is from the child slipping in the bathtub. Therefore, [L.T.R.] was residing in the home of his mother and stepfather when this bruising occurred." Petitioner contends that this paragraph put Respondents on notice that this issue may arise at trial.

Further, the Rules of Civil Procedure are applicable to Chapter 7B proceedings. *In re D.L.*, 166 N.C. App. 574, 603 S.E.2d 376 (2004). Rule 8 requires that a pleading contain "[a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief[.]" N.C. Gen. Stat. § 1A-1, Rule 8 (2005). Under the liberal standard of notice pleading, a claim is adequate if it gives sufficient notice of the events that produced the claim to enable the adverse party to understand the complaint's nature and basis and to file a responsive pleading. *Ripellino v. N.C. Sch. Bds. Ass'n*, 176 N.C. App. 443, 627 S.E.2d 225 (2006).

Respondent Stepfather did not testify at the adjudicatory hearing. However, his wife, mother of the children, clearly defended the allegations against her and her husband by offering evidence that L.T.R. sustained the bruise on his right leg from falling in the bathtub. Indeed, on *direct* examination, Respondent Mother was asked to describe her bathing "procedure" for L.T.R., and she then explained his nightly bath routine as follows:

> I would turn the water on for him, make sure it was the right temperature and let him have at it. He would play and he would rough house in there. He would have a good time and he would splash the water around and we would go about our business cooking dinner just playing around with the other kids and then he would yell out after about 20 or 30 minutes, "I'm ready to get out." And then I would go in there and I would make sure his hair was washed. Because he was three years old at the time[.]

Respondent Mother then identified and offered into evidence a plastic toy boat that she contended was responsible for the bruise on her son's leg. All of this evidence was elicited without objection by Respondent Stepfather.

IN RE L.T.R. & J.M.R.

[181 N.C. App. 376 (2007)]

Rule 15(b) of the North Carolina Rules of Civil Procedure provides that "[w]hen issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." N.C. Gen. Stat. § 1A-1, Rule 15(b) (2005). In the present case, Respondent Stepfather gave his implied consent by failing to object to the evidence when it was offered. In *Concrete Serv. Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 683, 340 S.E.2d 755, 759 (citations omitted), *cert. denied*, 317 N.C. 333, 346 S.E.2d 137 (1986), this Court held that "a party attempting to limit the trial of issues by implied consent must object specifically to evidence outside the scope of the original pleadings; otherwise, allowing an amendment to conform the pleadings to the evidence will not be error, and, in fact, is not even technically necessary." Accordingly, we hold that Respondent Stepfather impliedly consented to the adjudication of this issue before the trial court, and the trial court did not err in making findings of fact and conclusions of law on the evidence thus presented. This assignment of error is overruled.

Finally, Respondent Stepfather argues that the trial court erred in making findings of fact in the adjudication and disposition orders that are really conclusions of law. All but two of the findings of fact challenged by these assignments of error are statutorily required to be included in the trial court's adjudication and disposition orders. *See* N.C. Gen. Stat. §§ 7B-507(a)(1)-(a)(2); 7B-807 (2005). The two disputed findings of fact not statutorily required (that L.T.R. is an abused juvenile, and that both L.T.R. and J.M.R. are neglected juveniles) are not only supported by clear, cogent and convincing evidence as previously addressed, but are also properly recited as conclusions of law. This argument has no merit.

In conclusion, we hold that the trial court did not err in either the adjudicatory or disposition orders finding and concluding that L.T.R. was neglected and abused and that J.M.R. was neglected. The orders appealed from are thus

Affirmed.

Judges WYNN and HUDSON concur.

The judges concurred prior to 31 December 2006.