An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-262

Filed: 6 October 2015

Mecklenburg County, No. 13 JA 253, 254

IN THE MATTER OF: K.A., W.A.

Appeal by respondent from Order entered 23 December 2014 by Judge Rickye McKoy-Mitchell in Mecklenburg County District Court. Heard in the Court of Appeals 14 September 2015.

> *Senior Associate County Attorney Kathleen Arundell Jackson, for petitioner-appellee Mecklenburg County Department of Social Services, Youth and Family Services.*
>
> *Rebekah W. Davis, for respondent-appellant mother.*
>
> *IVEY, McCLELLAN, GATTON & SIEGMUND, L.L.P., by Charles (Chuck) M. Ivey, IV, for guardian ad litem.*

ELMORE, Judge.

On 11 October 2013, the Mecklenburg County Department of Social Services, Youth and Family Services (YFS) filed a petition alleging that K.A.[1] (Kyle) was a neglected and dependent juvenile and that W.A. (Wendy) was an abused, neglected, and dependent juvenile. The trial court entered an adjudication and disposition

---

[1] Pseudonyms have been used to protect the identity of the minor children.

Order on 23 December 2014, concluding: (1) Kyle was a neglected and dependent juvenile; (2) Wendy was a neglected, dependent, and abused juvenile; and (3) it was in the juveniles' best interests to remain in the custody of YFS. Their mother, respondent, appeals from that Order. After careful consideration, we affirm in part and reverse in part.

## I. Background

The factual background of this case is summarized in detail in the opinion of this Court in *In re K.A., W.A.*, No. COA14-518, 2014 WL 5587047 (N.C. Ct. App. Nov. 4, 2014). On 4 November 2014, this Court held that the trial court's findings of fact in the adjudication and disposition order entered 21 February 2014 were insufficient due to a lack of specificity. *In re K.A., W.A.*, 2014 WL 5587047, at *3. We reversed the disposition and we remanded to the trial court to make additional findings of fact. *Id.*

On remand, the trial court made additional findings of fact and entered a new adjudication and disposition Order on 23 December 2014. The trial court again concluded that Wendy was an abused, neglected, and dependent juvenile, that Kyle was a neglected and dependent juvenile, and that the children shall remain in the legal custody of YFS. Respondent appeals.

## II. Analysis

A. Standard of Review

N.C. Gen. Stat. § 7B-805 provides, "The allegations in a petition alleging that a juvenile is abused, neglected, or dependent shall be proved by clear and convincing evidence." N.C. Gen. Stat. § 7B-805 (2013). On appeal, an adjudication of dependency, abuse, and neglect is reviewed to determine: "(1) whether the findings of fact are supported by 'clear and convincing evidence,' and (2) whether the legal conclusions are supported by the findings of fact." *In re Pittman*, 149 N.C. App. 756, 763–64, 561 S.E.2d 560, 566 (2002) (quoting *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000)). "In a non-jury neglect adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." *In re Helms*, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997) (citing *In re Montgomery*, 311 N.C. 101, 110–11, 316 S.E.2d 246, 252–53 (1984); *Matthews v. Prince*, 90 N.C. App. 541, 543, 369 S.E.2d 116, 117 (1988)). If competent evidence supports the findings, they are "binding on appeal." *In re McCabe*, 157 N.C. App. 673, 679, 580 S.E.2d 69, 73 (2003) (citing *In re Allen*, 58 N.C. App. 322, 325, 293 S.E.2d 607, 609 (1982)).

B. Contested Findings of Fact

Respondent contests the following findings of fact:

> 3(h) The mother's actions following procurement of the 50B demonstrated a lack of insight and resolve to provide an environment free from domestic violence for the juveniles. She did not believe follow up with the Women's Commission or any DV treatment was necessary. The mother indicated a willingness to

allow [Mr. K.] to be back in the home and around the juveniles. She then provided information to the Court inconsistent to what she provided before as to the DV incident. Despite what the mother indicated occurred, the mother now testified that [Mr. K.] was simply not acting as himself.

3(i)    This indicates to the Court that the mother is unable to maintain the safety of the children.

### 1. Finding of Fact 3(h)

Respondent claims that finding 3(h) is not supported by the evidence because she was abiding by the safety plan, intended to continue abiding by it, did not entirely reject the idea of counseling for her children, and engaged in some services. Thus, respondent essentially argues that the trial court should have found the facts in a light more favorable to her. We are not persuaded.

"The trial judge determines the weight to be given the testimony and the reasonable inferences to be drawn therefrom. If a different inference may be drawn from the evidence, he alone determines which inferences to draw and which to reject." *In re Hughes*, 74 N.C. App. 751, 759, 330 S.E.2d 213, 218 (1985).

A review of the record shows that clear and convincing evidence existed to support finding 3(h). The trial court heard testimony from a social worker assigned to the case and from respondent. The court also considered the Domestic Violence Protective Order (DVPO) complaint, the DVPO itself, and a 2 October 2013 e-mail

from respondent to the YFS director that detailed the 17 September 2013 incident and respondent's fear of Mr. K.

At the adjudication hearing, respondent indicated that during the 17 September 2013 incident, Mr. K. simply was not acting as himself or was not in his right mind. She also claimed that she went to the hospital to treat a pre-existing condition, not due to injuries from domestic violence. Respondent stated that Wendy was just with her, and respondent did not specifically take Wendy to the hospital to be examined. Respondent's testimony, however, was in stark contrast to the statements made in her e-mail and in the DVPO complaint. In the e-mail, she indicated she was "VERY FORTUNATE that [she] was not killed or permanently injured" and "it was the 'scariest' times [she has] ever experienced[.]" In her DVPO complaint, she stated that she believed "there is danger of serious and immediate injury to me or my children."

Moreover, the social worker testified as to respondent's lack of cooperation, stating that she would only communicate via text message, she refused to involve her children in domestic violence counseling, and she claimed that she could determine whether they need such services. Respondent told the social worker that she went to the Women's Commission, but she failed to submit proof. At the hearing, however, respondent testified that she decided to go to a different shelter instead of the Women's Commission. In light of these inconsistencies "the trial court was entitled

to decide whether to credit [respondent's] initial testimony or a subsequent purported recantation." *In re T.M.*, 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006). Thus, it was well within the trial court's prerogative to weigh the evidence and find the facts necessary to the adjudication. *See Hughes*, 74 N.C. App. at 759, 330 S.E.2d at 218.

## 2. Finding of Fact 3(i)

Respondent next contends that finding 3(i) is actually a conclusion of law because it required the exercise of judgment, citing *In re J.V.*, 198 N.C. App. 108, 679 S.E.2d 843 (2009).

"A 'conclusion of law' is the court's statement of the law which is determinative of the matter at issue between the parties." *Hughes*, 74 N.C. App. at 759–60, 330 S.E.2d at 219. By contrast, "[f]indings of fact are statements of what happened in space and time." *State ex rel. Utilities Comm. v. Eddleman*, 320 N.C. 344, 351, 358 S.E.2d 339, 346 (1987). "The classification of a determination as either a finding of fact or a conclusion of law is admittedly difficult. As a general rule, however, any determination requiring the exercise of judgment, *see Plott v. Plott,* 313 N.C. 63, 74, 326 S.E.2d 863, 870 (1985), or the application of legal principles, *see Quick v. Quick*, 305 N.C. 446, 452, 290 S.E.2d 653, 657–58 (1982), is more properly classified a conclusion of law." *Helms*, 127 N.C. App. at 510, 491 S.E.2d at 675. Often, the misclassification "is merely an inconvenience" to the reviewing court. *Eddleman*, 320 N.C. at 352, 358 S.E.2d at 346.

In *In re J.V.*, this Court determined that the following finding of fact was more accurately characterized as a conclusion of law: The juveniles' "return to their own home would be contrary to their health, safety, welfare, and best interests." *J.V.*, 198 N.C. App. at 117, 679 S.E.2d at 848 (citing *Helms*, 127 N.C. App. at 511, 491 S.E.2d at 676 ("[B]est interest determinations are conclusions of law because they require the exercise of judgment.")).

Here, by finding that respondent's actions indicated that she "is unable to maintain the safety of the children," the trial court exercised judgment. Thus, we treat the finding of fact as a conclusion of law and will apply the appropriate standard of review to determine whether the findings of fact support the conclusion. The remaining unchallenged findings of fact are presumed supported by competent evidence and are binding on appeal. *See In re D.B.J.*, 197 N.C. App. 752, 754, 678 S.E.2d 778, 780 (2009).

C. Dependency

Respondent first argues that the trial court erred by concluding that Wendy and Kyle were dependent juveniles. Respondent claims that the trial court's order (1) is devoid of any finding of fact regarding the availability of an appropriate alternative child care arrangement, and (2) lacks findings of fact establishing that she was unable to provide care and supervision for the juveniles.

N.C. Gen. Stat. § 7B-101(9) defines a dependent juvenile as a "juvenile in need

of assistance or placement because (i) the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or (ii) the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen. Stat. § 7B-101(9) (2013).

In determining whether a juvenile is dependent, the trial court is required to "address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." *In re P.M.*, 169 N.C. App. 423, 427, 610 S.E.2d 403, 406 (2005). "Findings of fact addressing both prongs must be made before a juvenile may be adjudicated as dependent, and the court's failure to make these findings will result in reversal of the court." *In re B.M.*, 183 N.C. App. 84, 90, 643 S.E.2d 644, 648 (2007).

We agree with respondent's argument that the trial court failed to address the availability of an alternative child care arrangement, and YFS appears to concede this point. Although the adjudicatory findings of fact do not address the alternative child care arrangement prong, the trial court concluded as a matter of law that YFS proved dependency by clear and convincing evidence. Without the necessary findings in support, however, this conclusion is in error. *See B.M.,* 183 N.C. App. at 90, 643 S.E.2d at 648.

Based on the foregoing, the trial court erred in adjudicating Kyle and Wendy

dependent because it failed to find that they lacked an appropriate alternative child care arrangement. Because we reverse based on the second prong of dependency, we need not address respondent's challenge to the first prong.

D. Abuse

Respondent next argues that the trial court erred in concluding that Wendy was an abused juvenile. Respondent contends that the findings of fact and evidence do not support an adjudication of abuse because Wendy's contusion was essentially a bruise, which she claims does not qualify as a "serious physical injury." We disagree.

N.C. Gen. Stat. § 7B-101(1) defines an abused juvenile, in pertinent part, as one whose parent, guardian, custodian, or caretaker "(a) [I]nflicts or allows to be inflicted upon the juvenile a serious physical injury by other than accidental means; [or] (b) [C]reates or allows to be created a substantial risk of serious physical injury to the juvenile by other than accidental means[.]" N.C. Gen. Stat. § 7B-101(1) (2013). "[W]hether an injury is serious is generally a question for the jury 'because the nature of an injury is [dependent] upon the relative facts of each case.'" *In re L.T.R.*, 181 N.C. App. 376, 382, 639 S.E.2d 122, 126 (2007) (quoting *State v. Romero*, 164 N.C. App. 169, 172, 595 S.E.2d 208, 211 (2004)).

Respondent cites to *In re C.B., J.B., TH.B., & TI.B.*, 180 N.C. App. 221, 636 S.E.2d 336 (2006), for the proposition that a bruise is not a serious physical injury. In *C.B.*, this Court held that a father's corporal punishment "in the form of a spanking

or whipping that resulted in a bruise did not constitute abuse, as it did not inflict 'serious injury.' " *Id.* at 224, 636 S.E.2d at 338.

The facts of *C.B.*, however, are readily distinguishable from the facts of this case. Here, Wendy's contusion did not result from overzealous corporal punishment; rather, it was the aftermath of domestic violence. Indeed, the evidence shows that Mr. K.—a man convicted of multiple violent felonies—forcibly dragged Wendy into the hotel room by her hair, grabbed her by her mouth, and pinned her to the bed. Mr. K. did this in an attempt to prevent Wendy from calling 911 after he attacked respondent.

In *In re L.T.R.*, this Court noted that section 7B-101 does not define "serious physical injury." *L.T.R.*, 181 N.C. App. at 381, 639 S.E.2d at 125. However, we found the discussion in *State v. Romero*, 164 N.C. App. at 172, 595 S.E.2d at 211, regarding what constitutes a serious physical injury for purposes of felony child abuse, instructive. *L.T.R.*, 181 N.C. App. at 381–82, 639 S.E.2d at 125–26. In *Romero*, we concluded that the child suffered a serious physical injury, sufficient to support the defendant's conviction of felony child abuse, after the child was hit with a belt and suffered a visible bruise to his forehead. *Romero*, 164 N.C. App. at 172, 595 S.E.2d at 211. The *L.T.R.* Court, relying on *Romero*, concluded that the evidence in the case at bar was sufficient to support the trial court's determination of abuse where the child "had a dark, six-inch bruise, which lasted well over one week, on his right thigh."

*L.T.R.*, 181 N.C. App. at 382, 639 S.E.2d at 126.

Here, like in *L.T.R.*, Wendy's inner jaw contusion, coupled with the fact that she was pulled by her hair and pinned to the bed, was sufficient to support the trial court's determination that Wendy suffered "a serious physical injury by other than accidental means." N.C. Gen. Stat. § 7B-101(1) (2013). It was within the province of the trial court, as finder of fact, to determine whether Wendy's injury was serious. *L.T.R.*, 181 N.C. App. at 382, 639 S.E.2d at 126. The trial court did not err in concluding that Wendy was an abused juvenile.

E. Neglect

In her last argument, respondent claims that the trial court's evidence and findings do not support its conclusion that Kyle and Wendy were neglected juveniles. Respondent contends that Kyle was not affected by the incident because he went to school that morning and that she took steps to provide a safe home for both children. Additionally, respondent argues that prior abuse of a different child, standing alone, is not sufficient to sustain an adjudication of neglect.

N.C. Gen. Stat. § 7B-101(15) defines a neglected juvenile as

> [a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

N.C. Gen. Stat. § 7B-101(15) (2013). Furthermore, "[i]n determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile . . . has been subjected to abuse or neglect by an adult who regularly lives in the home." *Id.* "[T]he weight to be given that factor is a question for the trial court[.]" *In re A.S.*, 190 N.C. App. 679, 690, 661 S.E.2d 313, 320 (2008).

This Court has consistently required that "there be some physical, mental, or emotional impairment of the juvenile *or a substantial risk of such impairment* as a consequence of the failure to provide 'proper care, supervision, or discipline' in order to adjudicate a juvenile neglected." *In re McLean*, 135 N.C. App. 387, 390, 521 S.E.2d 121, 123 (1999) (citing *In re Safriet*, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901–02 (1993). "It is well-established that the trial court need not wait for actual harm to occur to the child if there is a substantial risk of harm to the child in the home." *In re D.B.J.*, 197 N.C. App. 752, 755, 678 S.E.2d 778, 780 (2009) (citation omitted). "Section 7B-101(15) affords 'the trial court some discretion in determining whether children are at risk for a particular kind of harm given their age and the environment in which they reside.' " *In re N.G.*, 186 N.C. App. 1, 8–9, 650 S.E.2d 45, 50 (2007) (quoting *McLean*, 135 N.C. App. at 395, 521 S.E.2d at 126).

Respondent is correct in her assertion that "the fact of prior abuse, standing alone, is not sufficient to support an adjudication of neglect." *See id.* at 9, 650 S.E.2d at 51. Indeed, "this Court has generally required the presence of other factors to

suggest that the neglect or abuse will be repeated." *In re J.C.B., C.R.R., H.F.R.*, ___ N.C. App. ___, ___, 757 S.E.2d 487, 489 (May 6, 2014) (No. COA13-1112). Here, however, Kyle's adjudication of neglect was not based solely on the abuse of Wendy. At the time of the 17 September 2013 incident, the family was living in a hotel room. In respondent's DVPO complaint and e-mail to YFS, she indicated that Mr. K.'s attack woke her children up, that she endured two hours of mental anguish, that Mr. K. would not allow her to walk Kyle to the bus stop alone, and that she and Wendy eventually barricaded themselves in a bathroom to call 911.

This Court has previously held that a child's exposure to domestic violence may constitute an environment injurious to the juvenile's welfare, where such exposure impacts the child, and therefore supports an adjudication of neglect. *See In re W.V.*, 204 N.C. App. 290, 294, 693 S.E.2d 383, 386–87 (2010); *D.B.J.*, 197 N.C. App. at 755, 678 S.E.2d at 780–81; *In re T.S., III & S.M.*, 178 N.C. App. 110, 113–14, 631 S.E.2d 19, 22–23 (2006). "Where there is no finding that the juvenile has been impaired or is at substantial risk of impairment, there is no error if all the evidence supports such a finding." *In re Padgett*, 156 N.C. App. 644, 648–49, 577 S.E.2d 337, 340 (2003). Here, the evidence shows that both Wendy and Kyle were present for, exposed to, and impacted by the domestic violence incident.

Respondent also argues that the adjudication of neglect cannot stand because the trial court failed to make a finding that Mr. K. "regularly lived" in the family's

home. The trial court, however, need not make such a finding for the neglect adjudication to stand in this case. Rather, it is "a relevant factor which the trial court could consider in making a determination of whether there was a substantial risk of impairment[.]" *McLean*, 135 N.C. App. at 395, 521 S.E.2d at 126.

Most importantly, the trial court's adjudication of neglect was based not only on the incident itself, but also because respondent's actions "demonstrated a lack of insight and resolve to provide an environment free from domestic violence for the juveniles" and indicated "that the mother is unable to maintain the safety of the children." Respondent recanted her complaint about Mr. K. after he was released from jail, refused to engage in services for herself and her children, and failed to appear in criminal court, causing the assault on a female, assault on a child under twelve years of age, and interfering with emergency communication charges to be dismissed. Thus, the trial court did not err in concluding that Kyle and Wendy were subjected to an environment injurious to their welfare and to a substantial risk of harm.

### III. Conclusion

In sum, we affirm the trial court's adjudication of neglect as to Wendy and Kyle, and the trial court's adjudication of abuse as to Wendy. We reverse the trial court's adjudication of dependency as to both Wendy and Kyle.

AFFIRMED IN PART; REVERSED IN PART.

Judges DILLON and DIETZ concur.

Report per Rule 30(e).