An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-725

Filed 16 July 2025

Haywood County, Nos. 23JA000011-430, 23JA000012-430

IN THE MATTER OF: A.J.W., A.R.W.

Appeal by Respondent-Mother from order entered 14 March 2024 by Judge Justin B. Greene in Haywood County District Court. Heard in the Court of Appeals 18 March 2025.

*David A. Perez, for Respondent-Appellant-Mother.*

*Agency Attorney Rachael J. Hawes and Assistant Agency Attorney Mattson T. Smith, for Petitioner-Appellee Haywood County Health and Human Services Agency.*

*Livingston Law Firm, PLLC by Lenore R. Livingston, for the Guardian ad Litem.*

CARPENTER, Judge.

Respondent-Mother appeals from the trial court's 14 March 2024 permanency-planning order (the "Order") ceasing reunification efforts and awarding guardianship of the minor children, A.J.W. ("Adam") and A.R.W. ("Ariel") (collectively, the

"Juveniles")[1] to Respondent-Mother's brother ("Maternal Uncle"). On appeal, Respondent-Mother argues the trial court failed to make the required findings under section 7B-906.2(d) to cease reunification efforts. Alternatively, Respondent-Mother asserts a portion of finding of fact 21 is not supported by competent evidence. After careful review, we affirm the Order.

## I.  Factual & Procedural Background

Respondent-Mother and Father, who is not a party to this appeal, are the biological parents of the Juveniles. Adam was born in November 2013 and Ariel was born in November 2017. At birth, Ariel tested positive for opiates and amphetamines, prompting Madison County's child protective services to become involved with the family. Madison County's child protective services remained involved with the family through 2020 due to concerns over Respondent-Mother's significant mental health needs, Respondent-Mother's substance abuse issues, and instances of domestic violence between Respondent-Mother and Father. In early November 2021, Respondent-Mother sought and obtained an ex parte domestic violence protective order against Father. Before proceeding to trial, Respondent-Mother and Father entered into a consent order. In the consent order, which remained in effect until December 2022, the trial court awarded custody of the Juveniles to Respondent-

---

[1] Pseudonyms are used to protect the identities of the minor children and for ease of reading. *See* N.C. R. App. P. 42(b).

Mother and granted Father supervised visitation.

In May 2022, the Haywood County Health and Human Services Agency ("DHHS") received a report that an incident of domestic violence occurred between Respondent-Mother and Father in the presence of the Juveniles. On 22 July 2022, Respondent-Mother contacted a social worker to report that Father broke into Respondent-Mother's home with his drug dealer, raped Respondent-Mother, and held her down while threatening to kill her. Respondent-Mother told the social worker that during the incident, Father ransacked "the whole house" and took Respondent-Mother's keys, medication, phone, and Adam's medication. Adam woke up from the noise and told Father to leave or he would call the police. Respondent-Mother told Adam, "[l]et daddy get what he came for and he will leave." Based on this incident, and several other instances of domestic abuse, Respondent-Mother sought and obtained a second DVPO (the "DVPO") against Father on 16 December 2022, which remained in effect until December 2023.

During their investigation, DHHS became increasingly concerned with Respondent-Mother's poor mental health, substance abuse problems, and inability to properly care for the Juveniles. On one occasion, when DHHS visited Respondent-Mother's home, Adam told a social worker that he and Ariel did not sleep in the bedrooms and only slept in the living room. Social workers also noted that during home visits the Juveniles were often dirty, and Ariel, who was four at the time, continued to wear diapers that were saggy and filthy. Additionally, social workers

described Respondent-Mother's home as "cluttered, with flies present throughout."

On 12 March 2023, DHHS filed petitions alleging the Juveniles were abused, neglected, and dependent. On 21 and 22 August 2023, the trial court conducted adjudication and disposition hearings. The day after the hearings, on 23 August 2023, Father was arrested for violating the DVPO by engaging in face-to-face contact with Respondent-Mother in a grocery store parking lot. Then, on 15 September 2023, the trial court entered an adjudication order concluding the Juveniles were abused and neglected and a disposition order adopting a permanent plan of reunification with a concurrent plan of guardianship with a relative or court-approved caretaker. In the disposition order, as a part of her case plan, the trial court required Respondent-Mother to, in pertinent part:

a. Complete a new mental health/substance abuse assessment and disclose her recent positive drug screen of Methamphetamine. Comply with all recommendations of that assessment.

b. Comply with random drug screens on the dates requested by [DHHS].

c. Obtain and maintain employment and provide proof of income to [DHHS] on a monthly basis.

d. Obtain safe and appropriate housing and allow announced and unannounced home visits by [DHHS] and Guardian ad Litem.

e. Complete an approved parenting class and provide certificate of completion.

f. Maintain positive communication with [DHHS] and Guardian ad Litem program.

g. Complete a Domestic Violence Education Course with Helpmate and provide safety plan to [DHHS] with certificate of completion.

> h. Maintain the existing [DVPO] . . . and follow all Orders of the [c]ourt.
> i. Have no contact with the [father].
> j. Have no contact with the children's kinship placement providers . . . .
> k. Sign releases as requested by [DHHS].

On 11 May 2023, while Respondent-Mother was exercising her supervised visitation with the Juveniles, she opened a package using a box cutter she brought inside the building. Social workers confiscated the box cutter and advised Respondent-Mother against bringing weapons to future visits. On 10 August 2023, however, during another supervised visit, a social worker observed Respondent-Mother remove a box cutter from her purse. On 12 October 2023, Respondent-Mother, again brought a box cutter to her visit with the Juveniles. Despite the repeated warnings regarding weapons, Respondent-Mother brought a hatchet to visitation on 25 January 2024 as a gift for Adam. During this visit, Respondent-Mother, "pop[ped] [Adam] on the butt" two times. Social workers also observed, during several different supervised visits, bruises and sores on Respondent-Mother's body.

On 27 October 2023, Father was arrested for violating the DVPO by eating at an IHOP with Respondent-Mother. Days later, on 1 November 2023, Father was arrested for violating the DVPO by making physical contact with Respondent-Mother. Then, on 11 November 2023, Father was arrested for violating the DVPO by engaging in face-to-face contact with Respondent-Mother while she was in her car.

Despite this requirement in her case plan, Respondent-Mother did not renew the DVPO when it expired in December 2023. Social workers reported that the ongoing contact between Respondent-Mother and Father, which was a major concern, had not stopped.

On 17 November 2023, Respondent-Mother participated in a comprehensive clinical assessment ("CCA"). The CCA required that Respondent-Mother complete at least nine hours per week in a Substance Abuse Intensive Outpatient Program ("SAIOP"). On 11 December 2023, Respondent-Mother completed one SAIOP session via telehealth. On 24 January 2024, Respondent-Mother cancelled a scheduled home visit with the Guardian ad Litem because she overslept. Between 15 September 2023 and 6 February 2024, Respondent-Mother completed two out of eight drug screens requested by DHHS.

On 6 February 2024, the trial court conducted a second permanency-planning hearing. During the hearing, the Guardian ad Litem introduced forms captioned "I want to say something" that were prepared by the Juveniles. In the forms, the Juveniles indicated they wished to stay with Maternal Uncle. Thereafter, on 14 March 2024, the trial court entered the Order ceasing reunification efforts with Respondent-Mother and awarding guardianship to Maternal Uncle. On 2 April 2024, Respondent-Mother filed written notice of appeal from the Order.

## II.  Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7B-1001(a)(5) (2023).

### III. Issue

The issue is whether the trial court's decision to cease reunification was supported by the findings and competent evidence.

### IV. Analysis

Respondent-Mother argues the trial court's findings regarding cessation of reunification were improper because they only reflected the "bare statutory language" of section 7B-906.2(d) or, in the alternative, were not supported by competent evidence. For the reasons outlined below, we conclude the trial court's ultimate findings are supported by the unchallenged evidentiary findings. Accordingly, we affirm the Order.

#### A. Standard of Review

This Court reviews a permanency-planning order to evaluate "whether there is competent evidence in the record to support the findings and whether the findings support the conclusions of law." *In re J.H.*, 244 N.C. App. 255, 268, 780 S.E.2d 228, 238 (2015) (internal quotation marks and citation omitted). The trial court's findings of fact "are conclusive on appeal when supported by any competent evidence, even if the evidence could sustain contrary findings." *In re L.T.R. & J.M.R.*, 181 N.C. App. 376, 381, 639 S.E.2d 122, 125 (2007). Furthermore, "[f]indings of fact not challenged by [a] respondent are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58 (2019) (citing *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

The trial court's decision to cease reunification efforts is reviewed for abuse of discretion, "as those decisions are based upon the trial court's assessment of the child's best interests." *In re L.R.L.B.*, 377 N.C. 311, 315, 857 S.E.2d 105, 111 (2021). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re C.J.H.*, 240 N.C. App. 489, 492–93, 772 S.E.2d 82, 86 (2015).

## B. Discussion

At any permanency-planning hearing, the trial court is required to make reunification the primary or secondary plan unless the trial court makes written findings that "reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety." N.C. Gen. Stat. § 7B-906.2(b) (2023). Further, to demonstrate the degree of success or failure toward reunification, the trial court is required to make written findings as to each of the following:

> (1) Whether the parent is making adequate progress within a reasonable period of time under the plan.
>
> (2) Whether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile.
>
> (3) Whether the parent remains available to the court, the department, and the guardian ad litem for the juvenile.
>
> (4) Whether the parent is acting in a manner inconsistent with the health or safety of the juvenile.

N.C. Gen. Stat. § 7B-906.2(d) (2023).

In the instant case, the trial court concluded that reunification efforts clearly

would be unsuccessful and inconsistent with the Juveniles' health and safety. In support of this conclusion, the trial court made the following ultimate findings addressing the degree of success or failure toward reunification:

> 21. [Respondent-Mother] is not making adequate progress within a reasonable period of time under the plan; [Respondent-Mother] is not actively participating in or cooperating with the plan, [DHHS], and the guardian ad litem for the juveniles; [Respondent-Mother] has remained somewhat available to the court, [DHHS], and the guardian ad litem for the juveniles; and [Respondent-Mother] is acting in a manner inconsistent with the health and safety of the juveniles.

Although ultimate finding 21 tracks the statutory language provided by section 7B-906.2(d), we conclude it is supported by the trial court's unchallenged evidentiary findings. *See In re G.C.*, 384 N.C. 62, 65, n.3, 884 S.E.2d 658, 661, n.3 (2023); N.C. Gen. Stat. § 7B-906.2(d).

First, the trial court's ultimate finding that Respondent-Mother was not making adequate progress within a reasonable period of time under her case plan is supported by unchallenged findings of fact 13, 14, and 15, each addressing Respondent-Mother's failures to maintain the DVPO against Father, have no contact with Father, comply with all drug screens requested by DHHS, and engage in mental health and substance abuse services. *See In re T.N.H.*, 372 N.C. at 407, 831 S.E.2d at 58. Respondent-Mother completed just two of eight drug screens requested by DHHS and only attended one SAIOP session. Further, Respondent-Mother

continued to engage in face-to-face contact with Father despite the DVPO and failed to renew the DVPO before it expired in December 2023.

Next, the trial court's ultimate finding that Respondent-Mother was not actively participating in or cooperating with her case plan, DHHS, or the Guardian ad Litem, is also supported by unchallenged findings of fact 13, 14, 15, 16, and 17. *See id.* at 407, 831 S.E.2d at 58. Again, Respondent-Mother only completed two of eight drug screens requested by DHHS. Additionally, Respondent-Mother did not allow DHHS to inspect the three-bedroom home she claimed to have shared with a friend. Because Respondent-Mother cancelled the home visit scheduled for 24 January 2024, DHHS was unable to verify whether Respondent-Mother's home was a safe and stable environment for the Juveniles. Further, despite DHHS's requests, Respondent-Mother failed to provide proof of stable employment or monthly income.

Finally, the trial court's ultimate finding that Respondent-Mother acted in a manner inconsistent with the Juveniles' health and safety is supported by unchallenged findings of fact 13 and 17. *See id.* at 407, 831 S.E.2d at 58. Notably, despite the existence of the DVPO, instances of physical and sexual abuse, and the requirements under her case plan, Respondent-Mother continued to engage in voluntary face-to-face contact with Father. For example, a social worker observed Respondent-Mother having breakfast with Father inside IHOP and Respondent-Mother also bonded Father out of jail after Father was arrested for violating the DVPO. Additionally, Respondent-Mother exhibited concerning behavior during

supervised visitation, including bringing weapons inside the building after repeated instructions to the contrary.

In sum, ultimate finding 21 is supported by the trial court's unchallenged evidentiary findings. Because the trial court's ultimate findings under section 7B-906.2(b) were supported by the unchallenged evidentiary findings, the trial court's decision to cease reunification was not "manifestly unsupported by reason" or "so arbitrary it could not have been the result of a reasoned decision." *See In re C.J.H.*, 240 N.C. App. at 492–93, 772 S.E.2d at 86; N.C. Gen. Stat. § 7B-906.2(d).

Competent evidence shows that Respondent-Mother did not make adequate progress toward her case plan goals and exhibited behavior demonstrating reunification would clearly be unsuccessful and inconsistent with the Juveniles' health and safety. Namely, Respondent-Mother did not comply with her case plan directive to refrain from contacting Father and failed to address her substance abuse and mental health issues. *See In re A.P.W.*, 378 N.C. 405, 415, 861 S.E.2d 819, 828–29 (2021).

The portions of the ultimate finding that Respondent-Mother made some progress and made herself somewhat available to the court does not change our analysis. Although Respondent-Mother completed one SAIOP class, submitted two drug screens which came back negative, and attended domestic violence education courses, limited progress is not adequate progress. *See In re Bishop*, 92 N.C. App. 662, 670, 375 S.E.2d 676, 681–82 (1989) (determining the respondent had made some

progress in the areas of job and parenting skills, but her progress was extremely limited and did not yield positive results). Accordingly, we affirm the Order.

## V. Conclusion

The trial court made the required findings under section 7B-906.2(d) and its ultimate findings were supported by the unchallenged evidentiary findings. Therefore, the trial court did not abuse its discretion by ceasing reunification efforts and awarding guardianship of the Juveniles to Maternal Uncle. Accordingly, we affirm the Order.

AFFIRMED.

Chief Judge DILLON and Judge GRIFFIN concur.

Report per Rule 30(e).